UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER ALLEN, et al.,<br><br>               Plaintiffs,<br><br>-against-<br><br>CARL KOENIGSMANN, MD, et al.,<br><br>               Defendants. | No. 19-CV-8173 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    The Court is in receipt of Defendants' letters requesting clarification on the Court's privilege rulings regarding certain documents produced to the Court for in camera review. (See dkt. nos. 237, 239.) In response to that request, the Court finds it appropriate to explain some of its privilege findings.

**I.  Discussion**

    Defendants assert two primary privileges over the lion's share of the documents at issue: attorney-client privilege and work-product privilege. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The work-product privilege, on the other hand, is "broader than the attorney-client privilege," In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003),

1

but its protection "is not absolute," United States v. Nobles, 422 U.S. 225, 239 (1975).  "The work-product rule shields from disclosure materials prepared in anticipation of litigation by a party . . . absent a showing of substantial need." United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995) (quotation marks omitted).  "A substantial need exists where the information sought is essential to the party's defense, is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues."  Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010) (quotation marks omitted).

    Defendants' request for clarification centers on certain documents bearing Control Numbers beginning with "CMoores." (See dkt. no. 237 at 1-2.)  Generally, those documents contain two types of files: (1) email communications between RMDs, CMOs, and counsel; and (2) attachments to those messages related to medical re-assessments of patients.  Dr. Carol Moores' declaration specifies that these emails and attachments were prepared either "for the purpose of conveying information to counsel for the purpose of litigation on a regular basis" or "for the purpose of obtaining documents or information to provide counsel for the purpose of assisting them in litigation."  (Dkt. no. 229 ¶¶ 9, 11.)

Based on Dr. Moores' characterization of the documents and a careful review of their contents, the Court finds that the attorney-client privilege does not protect the documents because they are not "communications" made "for the purpose of obtaining or providing legal advice."  Mejia, 655 F.3d at 132.  Instead, the documents appear to have been created in order to prepare for this litigation, meaning that the work-product privilege may protect them.  See Adlman, 68 F.3d at 1501.

As mentioned above, however, the work-product privilege is qualified and can be overcome by showing substantial need.  Id. Related to most of the attachments--i.e., the patients' medical re-assessments[1]--the Court finds that such a "substantial need" is present.  Those documents contain information regarding, among other things, (1) the treatments patients have received and their responses to those treatments, (2) whether the patients have had issues with "drug diversion," and (3) whether the evaluating physicians recommend a trial of an MWAP medication.  In this § 1983 case alleging deliberate

---

[1] The Court observes that some attachments are themselves separate email communications about the status of Defendants' production of documents.  (See, e.g., CMoores00000138.0002, CMoores00000139.0002.)  Those attachments will be grouped with the other email communications and analyzed separately.

Also among the attachments are lists summarizing all the patient re-assessments that Defendants conducted.  (See CMoores00000138.0001, CMoores00000139.0001.)  The Court finds it appropriate to analyze those summaries along with the re-assessment forms themselves.

3

indifference to patients' medical needs in violation of the Eighth Amendment, such information--which relates directly to physicians' assessments of patients' medical needs--undoubtedly "carries great probative value on contested issues." Gucci, 271 F.R.D. at 75.  Indeed, this fact work product is essential to Plaintiffs' case, and they cannot obtain it from anyplace else.[2] Accordingly, the work-product rule does not protect Defendants' medical re-assessments of potential class-member patients.[3]

As for the email communications, however, the Court determines that no substantial need exists for Plaintiffs to access those documents.  As Defendants aptly describe, those messages "relay[] information regarding the progress of patient reassessments conducted for the purpose of this litigation." (Dkt. no. 237 at 2.)  In the interest of limiting Plaintiffs' access to Defendants' litigation strategy, and because Plaintiffs will still have access to the underlying re-assessments, the Court finds that those email communications remain shielded by the work-product privilege.

---

[2] See Hickman v. Taylor, 329 U.S. 495, 511 (1947) ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had.").

[3] The Court finds that the attachments summarizing the re-assessments Defendants conducted are similarly not privileged. A substantial need also exists for those documents because they provide important context regarding which patients (and how many) were re-assessed.

4

## II. Conclusion

In light of the above, the Court summarizes and amends its privilege findings as follows:

| Bates/Control No. | Privileged? |
|---|---|
| DDinello00003751 | Yes |
| OAG MWAP 4450 | No |
| OAG MWAP 210 | Yes |
| CMoore00000007 | Yes |
| CMoore00000007.0001-0013 | No |
| CMoores00000081-81.0001 | Yes |
| CMoores00000081.0002-.0007 | No |
| CMoores00000152 | Yes |
| CMoores00000152.0001-.0010 | No |
| CMoores00000139 | Yes |
| CMoores00000139.0001 | No |
| CMoores00000139.0002 | Yes |
| CMoores00000008 | Yes |
| CMoores00000008.0001-0013 | No |
| CMoores00000138 | Yes |
| CMoores00000138.0001 | No |
| CMoores00000138.0002 | Yes |
| MMalvarosa00000001 | Yes |
| MMalvarosa00000012 | Yes |
| MMalvarosa0000021 | Yes |
| CMoores00000144 | Yes |
| CMoores00000145 | Yes |
| CMoores00000145.0001-0013 | No |
| CMoores00000143 | Yes |
| CMoores00000143.0001-0002 | No[4] |

---

[4] These documents are simply Plaintiffs' first and second requests for production.

In light of this clarification, counsel shall confer and inform the Court--by letter and no later than April 30, 2021--how they propose to proceed with discovery.

**SO ORDERED.**

Dated:    April 20, 2021
         New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge