```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| PETER ALLEN, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> CARL KOENIGSMANN, MD, et al., <br><br> Defendants. | No. 19-CV-8173 (LAP) <br><br> ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Plaintiffs' motion to preclude the expert testimony of the Defendant Regional Medical Directors--that is, Doctors Dinello, Bozer, Mueller and Hammer (collectively, "the RMDS")--as well as the Defendant Chief Medical Officers Koenigsmann and Morley (collectively, "the CMOs" and, together with the RMDs, "the Doctors"). (See dkt. no. 213.)  Defendants opposed the motion, (see dkt. no. 220), and Plaintiffs replied, (see dkt. no. 225).  For the reasons below, Plaintiffs' motion is DENIED without prejudice to renewal.

### I.  Discussion

This is not the parties' first dispute regarding the Doctors' offering expert testimony.  (See dkt. no. 178.)  To resolve this motion, the Court must answer two questions.  First, have Defendants complied with Rule 26(a)(2) regarding the Doctors' proposed expert testimony.  And second, if not, should

1

the Doctors be precluded from offering such testimony.  The Court will take each in turn.

### a. Fed. R. Civ. P. 26(a)(2)

A recent in-district case provides a helpful "lay of the land" related to Rule 26(a)(2) and physician testimony:

> In general, a treating physician may testify to opinions formed in the course of treatment without regard to the disclosure requirements of Rule 26(a)(2).  When acting as an expert, the physician may testify to matters beyond plaintiff's course of treatment, i.e., information acquired from outside sources.
>
> If a party offers a treating physician as an expert, there is no need to provide a written expert report under Rule 26(a)(2)(B) because treating physicians are not retained or specifically employed to provide expert testimony in the case.  But a treating physician's expert disclosure must meet the requirements of Rule 26(a)(2)(C) if he or she is to opine on matters outside of his or her treatment.

Olutosin v. Gunsett, No. 14-CV-00685 (NSR), 2019 WL 5616889, at *5 (S.D.N.Y. Oct. 31, 2019) (citations and quotation marks omitted).  "The key to what a treating physician can testify to without being declared an expert is based on his personal knowledge from consultation, examination and treatment of the [p]laintiff, not from information acquired from outside sources."  Mercado v. Dep't of Corr., No. 3:16-CV-01622-VLB, 2019 WL 625697, at *4 (D. Conn. Feb. 14, 2019).

Before assessing Defendants' compliance with Rule 26(a)(2), it is useful to break down the scope of the Doctors' testimony.

The Doctors propose to testify about the following: (1) their credentials,[1] (2) their knowledge of the process for reviewing and approving MWAP requests,[2] (3) their opinion that the MWAP Policy was "reasonable and necessary,"[3] and (4) their medical opinions regarding the approval or rejection of MWAP requests for certain patients.[4]  The instant dispute centers on the third silo of testimony.

Each of the Doctors hopes to testify that the MWAP Policy was "reasonable and necessary" to (1) ensure that prescriptions of medication were in accordance with "community standards" of medical care and (2) prevent "over-prescription."[5]  Those opinions certainly go beyond the Doctors' roles as treating or

---

[1] (See dkt. no. 213-3 at 2-3 (RMD Mueller); dkt. no. 213-4 at 2-3 (RMD Hammer); dkt. no. 213-5 at 2-3 (RMD Dinello); dkt. no. 213-6 at 2-3 (CMO Morley); dkt. no. 213-7 at 2-3 (CMO Koenigsmann); dkt. no. 213-8 at 2-3 (RMD Bozer).)

[2] (See dkt. no. 213-3 at 3-4; dkt. no. 213-4 at 3-4; dkt. no. 213-5 at 3-5; dkt. no. 213-8 at 3-4.)  Because the CMOs rarely reviewed MWAP requests, the CMOs plan to testify more generally regarding their knowledge and experience regarding the MWAP Policy's promulgation and administration.  (See dkt. no 213-6 at 4; dkt. no. 213-7 at 3-4.)

[3] (See dkt. no. 213-3 at 4-5; dkt. no. 213-4 at 4; dkt. no. 213-5 at 5; dkt. no. 213-6 at 4; dkt. no. 213-7 at 3; dkt. no. 213-8 at 4.)

[4] (See dkt. no. 213-3 at 5-34; dkt. no. 213-4 at 4-11; dkt. no. 213-5 at 5-11; dkt. no. 213-6 at 4; dkt. no. 213-7 at 3-7; dkt. no. 213-8 at 4-6.)

[5] (Dkt. no. 213-3 at 4-5; dkt. no. 213-4 at 4; dkt. no. 213-5 at 5; dkt. no. 213-6 at 4; dkt. no. 213-7 at 3; dkt. no. 213-8 at 4.)

Case 1:19-cv-08173-LAP   Document 241   Filed 04/20/21   Page 4 of 9

consulting physicians--the Doctors seek to opine on a general policy applicable to a wide array of inmates and medication requests.  Accordingly, to offer those opinions, the Doctors must disclose "a summary of the facts and opinions to which the witness is expected to testify."  FED. R. CIV. P. 26(a)(2)(C)(ii).  Although that standard is lower than the one governing retained experts, "it is not acceptable to provide scant details."  Olutosin, 2019 WL 5616889, at *3.

Yet, Defendants provide precious little information about the facts underlying their opinions.  Indeed, Defendants merely offer that the Doctors' testimony will be based on their (1) "review of the pertinent file materials maintained by [Defendants], including the pleadings, discovery, deposition transcripts, medical and other records and reports and any trial testimony had in this matter"; (2) "review of applicable authorities and texts in [the witness's] field of expertise, customs and practices, standards, rules, laws, statutes, and regulations, pertaining to this matter"; and (3) "education, experience and training, as related to the facts and circumstances of this matter."[6]  Those disclosures, which suggest that the Doctors conceivably could rely on any DOCCS document or

---

[6] (Dkt. no. 213-3 at 2; dkt. no. 213-4 at 2; dkt. no. 213-5 at 2; dkt. no. 213-6 at 2; dkt. no. 213-7 at 2; dkt. no. 213-8 at 2.)

4

any outside authority (legal, medical, or otherwise), do almost nothing to narrow the universe of possible facts to which the Doctors will testify regarding the MWAP Policy.  That sort of bare-bones explanation is insufficient to "provide fair notice of the basis for [the Doctors'] expected testimony and scope" such that Plaintiffs can "prepare their defense against potential expert opinions."  Olutosin, 2019 WL 5616889, at *6 (quotation marks omitted).  Rule 26(a)(2)(C) requires more.[7]

In sum, the Court finds that Defendants' Rule 26(a)(2)(C) disclosures are deficient related to the Doctors' proposed opinion testimony about the reasonableness and necessity of the MWAP Policy.  The Court must next consider whether the Doctors should be precluded from offering that testimony.

---

[7] It is necessary to make an additional observation related to the disclosures for the Doctors' opinions regarding the approval or rejection of MWAP requests.  For the most part, those disclosures provide robust outlines of the variety of medical records and other DOCCS administrative records that the Doctors consulted.  (See dkt. no. 213-3 at 3-4; dkt. no. 213-4 at 3-4; dkt. no. 213-5 at 3-5; dkt. no. 213-8 at 3-4.)  However, Defendants also disclosed that the RMDs, when deciding whether to approve an MWAP request, sometimes conducted independent research about medications.  (See dkt. no. 213-3 at 4; dkt. no. 213-4 at 4; dkt. no. 213-5 at 4-5; dkt. no. 213-8 at 4.)  But Defendants provide no further details about what that independent research entailed.  For the same reasons that the MWAP Policy disclosures are inadequate, the "independent research" disclosures are too.  To the extent that the Doctors wish to offer opinion testimony based on such "independent research," they must disclose the facts relevant to that research.

### b. Fed. R. Civ. P. 37(c)(1)

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED R. CIV. P. 37(c)(1).  "Although Rule 37(c)(1) is written in mandatory terms, the imposition of sanctions for abuse of discovery is a matter within the discretion of the trial court."  Olutosin, 2019 WL 5616889, at *4 (quotation marks omitted).  In exercising that discretion, the Court may consider:

> (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) (cleaned up).  "[P]reclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution."  Martinez v. Port Auth. of N.Y. & N.J., No. 01 Civ. 721 (PKC), 2005 WL 2143333, at *14 (S.D.N.Y. Sept. 2, 2005).

After considering the Design Strategy factors, the Court declines to preclude the Doctors' testimony at this time.  Even though Defendants have offered no reasonable explanation for

6

their failure to prepare adequate disclosures,[8] it is reasonable to infer that the Doctors' testimony regarding the MWAP Policy will be important to this case.  And although Plaintiffs would undoubtedly be prejudiced by the lack of notice regarding the scope of the Doctors' testimony, Plaintiffs have offered no authority where a court precluded expert testimony at such an early stage of the litigation.[9]  Indeed, Plaintiffs have not yet filed a motion for class certification, no hearing on certification has been calendared, and a trial date has not been set.  Because this case is still in its relative infancy,

---

[8] Although the Court is sympathetic to Plaintiffs' frustrations, Defendants' conduct does not appear to rise to the level of "flagrant bad faith" or a "callous disregard of the rules" that ordinarily would merit preclusion.  Olutosin, 2019 WL 5616889, at *4.  To the contrary, in response to the Court's previous ruling regarding Dr. Bozer's Rule 26(a)(2) disclosure, Defendants made efforts to supplement the facts offered regarding Dr. Bozer's treatment of Plaintiffs.  (Compare dkt. no. 213-8 at 4-6 (amended disclosure) with dkt. no. 213-2 at 4-5 (original disclosure).)

[9] Indeed, courts have been hesitant to preclude testimony even at later stages in the litigation.  See, e.g., Exo-Pro, Inc. v. Seirus Innovative Accessories, Inc., No. CV 05-3629 (LDW) (AKT), 2008 WL 4878513, at *4 (E.D.N.Y. Feb. 19, 2008) (denying motion to preclude expert testimony even when expert report was not produced to opposing party until long after agreed-upon deadlines in case management plan); NIC Holding Corp. v. Lukoil Pan Americas, LLC, No. 05-CIV-9372 (LAK) (FM), 2007 WL 1467424, at *5 (S.D.N.Y. May 16, 2007) (denying motion to preclude expert testimony where initial disclosure of expert was made in proposed pretrial order because there remained time to take the witness's deposition); Ridgeview Partners, LLC v. Entwistle, 354 F. Supp. 2d 395, 404 (S.D.N.Y. 2005) (denying motion to preclude expert testimony where initial disclosure of expert witnesses was made in joint pre-trial order).

Plaintiffs' prejudice can be ameliorated, in significant part, by (1) Defendants' timely supplementing their Rule 26(a)(2)(C) disclosures and (2) Plaintiffs' deposing the Doctors.[10]

The Court also notes that at least some of Plaintiffs' contentions related to the Doctors' testimony seem to stem from Plaintiffs' view that the Doctors are not qualified to offer expert opinions on the MWAP Policy.[11]  But whether a witness is qualified to provide expert testimony is a distinct issue from the one now before the Court.  No more need be said at this time.  Plaintiffs, of course, remain free to challenge the Doctors' qualifications to provide expert testimony at the appropriate time.

In short, out of an excess of caution, the Court will give Defendants a second--or, in the case of RMD Bozer, a third--crack at producing adequate Rule 26(a)(2)(C) disclosures.  It won't give a third (or fourth).

---

[10] The Court agrees with Plaintiffs' sentiment that, in the ordinary course, "[d]epositions are conducted after disclosures."  (Dkt. no. 225 at 2.)  In that vein, the Court understands that, to the extent that Defendants wish to avail themselves of one last chance to provide sufficient disclosures, depositions may have to be adjourned.

[11] (See, e.g., dkt. no. 225 at 2 ("Defendant RMDs . . . might be qualified as general physicians but will certainly not qualify as experts in pharmacology, drug addiction, pain management, hematology or the treatment of diseases like cancer, sickle cell disease, AIDs, or hereditary neurological disorders. Yet, there they were, discontinuing or refusing prescriptions by experts without even seeing the patients.").)

8

## II. Conclusion

For the foregoing reasons, Plaintiffs' motion [dkt. no. 213] to preclude the Doctors' expert testimony is DENIED without prejudice to renewal.  To the extent that Defendants wish to avail themselves of one last chance to provide sufficient disclosures as to all of the topics the Doctors propose to testify about, they shall inform Plaintiffs promptly and shall provide such disclosures within thirty days of the date of this order.  The Clerk of the Court shall close the open motion.

**SO ORDERED.**

Dated:    April 20, 2021
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge