UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
PETER ALLEN, et al.,

                    Plaintiffs,

        - against -                          19-CV-8173 (LAP)

CARL KOENIGSMANN, et al.,

                    Defendants.
-----------------------------------------------------------------

**STATE REPRESENTED DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO PRECLUDE**

LETITIA JAMES
Attorney General of the
State of New York
*Attorney for State Represented Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8550, -8659

Michael J. Keane
Ian Ramage
Assistant Attorneys General
        *of counsel*

## TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTS RELATED TO DR. MEHTA'S EXPERT DISCLOSURES ............................ 2

ARGUMENT ...................................................................................................................... 8

POINT I        DEFENDANTS HAVE DISCLOSED THE FACTS AND DATA
               CONSIDERED BY DR. MEHTA IN FORMING HIS OPINIONS ...................... 8

POINT II       ANY DEFICIENCIES ARE HARMLESS BECAUSE PLAINTIFFS
               ARE NOT PREJUDICED ..................................................................... 12

POINT III      PRECLUSION IS NOT WARRANTED .............................................. 14

POINT IV       DR. MEHTA'S EXPERT TESTIMONY IS RELIABLE UNDER
               *DAUBERT* ......................................................................................... 17

POINT V        THERE ARE NO COLORABLE GROUNDS TO PRECLUDE THE
               OPINIONS EXPRESSED IN THE REBUTTAL REPORT ................................ 19

    A.    The Rebuttal Report is Reliable ................................................................. 20

    B.    The Rebuttal Report Properly Rebuts Dr. Carinci's Report .......................... 20

    C.    The Rebuttal Report Does Not Raise Irrelevant Issues or Reach Improper
          Conclusions ............................................................................................ 21

CONCLUSION ................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                        Page(s)

*Amorgianos v. National R. R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)............................................................................18

*Crowley v. Chait*,
    322 F. Supp. 2d 530 (D.N.J. 2004) ...............................................................19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579, 597 (1993).......................................................................... 17-19

*Hinton v. Patnaude*,
    No. 92 Civ. 405, 1995 WL 641957 ( N.D.N.Y. Aug. 2, 1995).................15

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992).............................................................................22

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y.2009)...............................................................17

*In re Kreta Shipping, S.A.*,
    181 F.R.D. 273 (S.D.N.Y. 1998) ...................................................................15

*Kumho Tire, Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................17

*Long Term Capital Holdings v. United States*
    No. 01 CV 1290, 2003 WL 21518555 (D.Conn. May 15, 2003) ...........19

*Martinez v. Port Auth. of N.Y. & N.J.*,
    No. 1 Civ. 721, 2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005) .............8, 15

*Olutosin v. Gunsett*,
    No. 14 Civ. 685, 2019 WL 5616889 (S.D.N.Y. Oct. 31, 2019) .............15

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*,
    No. 03 CV 1851, 2008 WL 4911440 (E.D.N.Y. Nov. 13, 2008) ...........22

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ...................................................................19

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
    118 F.3d 955 (2d Cir.1997)........................................................................15, 16

*Speedfit LLC v. Woodway USA, Inc.*,
    13 Civ. 1276, 2019 WL 1436306 (E.D.N.Y. 2019)......................................17

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)................................................................................22

**FEDERAL RULES**

Fed. R Civ. P.
   Rule 26 ............................................................................................ 3, 8-17,20
   Rule 26(a)(2).................................................................................................21
   Rule 26(a)(2)(B)....................................................................................2, 7, 8, 12
   Rule 26(a)(2)(B)(ii)..........................................................................................2
   Rule 37 ..........................................................................................................3
   Rule 37(c)(1) ..................................................................................................15

**MISCELLANEOUS AUTHORITIES**

Dr. Mehta's "Expert Report for the Case".....................................................................6

Report, the July 6, 2022 Rebuttal Report, and the August 18, 2022 testimony of
   Dr. Mehta ......................................................................................................3

## Preliminary Statement

Defendants Carl Koenigsmann, John Morley, Susan Mueller, David S. Dinello, John Hammer, and Kristin Salotti, current or former officials of the New York State Department of Corrections and Community Supervision ("DOCCS") (collectively the "State Represented Defendants"), by their attorney, Letitia James, Attorney General, State of New York, submit this memorandum of law in opposition Plaintiffs' motion to preclude the reports and related testimony of State Represented Defendants' expert, Dr. Neel Mehta.[1]

As explained below, Plaintiffs' motion should be denied, as State Represented Defendants have disclosed the facts and data considered by Dr. Mehta in forming his opinions. At all times, counsel for the State Represented Defendants have acted in good faith to provide additional clarification to Plaintiffs to assist in their understanding of the facts and data considered by Dr. Mehta. Furthermore, any deficiencies the Court may find in Defendants' disclosures are harmless because Plaintiffs are not prejudiced. As such, the drastic remedy of preclusion is not warranted because of the extreme prejudice such a remedy would cause Defendants, and a continuance is easily permissible, given that expert discovery is still ongoing and expert depositions remain to be taken. Additionally, Dr. Mehta's expert testimony is reliable under *Daubert*, as there are sufficient facts to form a reliable foundation for his opinion. In any event, any *Daubert* motion is premature,

---

[1] To assist the factfinder in this case, State Represented Defendants disclosed Dr. Neel Mehta as an expert witness to provide an opinion as to the issues in this case, including issues arising out of the application and implementation of DOCCS' Medications With Abuse Potential ("MWAP") policy. Since 2019, Dr. Mehta has served as Medical Director of Pain Medicine at the New York-Presbyterian Hospital-Weill Cornell Medical Center's and has also served since 2012 as the Division Chief of Pain Management, and since 2016, as the Co-Director of the Weill Cornell Medicine Center for Comprehensive Spine Care. He also holds the academic rank of Associate Professor of Clinical Anesthesiology at Weill Cornell Medical University. Dr. Mehta's primary activity is in direct patient care, within the areas of acute and chronic pain management, where he treats patients with acute and chronic pain. In the course of his patient care, he also provides clinic-based education of medical students, residents, and fellows, and has lectured professionally and conducted research on the management of chronic pain and safer opioid prescribing. Dr. Mehta serves as President of the Eastern Pain Association. *See* Dr. Mehta's CV, attached to the Declaration of Ian Ramage, dated October 5, 2022 ("Ramage Declaration") as Exhibit A.

given the procedural status of the case. Finally, there are no colorable grounds to preclude the opinions expressed in the report or rebuttal report, as it properly rebuts Plaintiffs' expert report.

## **FACTS RELATED TO DR. MEHTA'S EXPERT DISCLOSURES**

State Represented Defendants disclosed Dr. Neel Mehta as an expert witness to provide an opinion as to the issues in this case, including issues arising out of the application and implementation of DOCCS' Medications With Abuse Potential ("MWAP") policy. Pursuant to Fed. R. Civ. P. 26(a)(2)(B), State Represented Defendants served Dr. Mehta's "Expert Report for the Case" on March 7, 2022 (the "Mehta Report"), attached to the Ramage Declaration as Exhibit B, and on July 6, 2022, served Dr. Mehta's "Comments and Rebuttal Report to Plaintiffs' Expert, Dr. Adam Carinci." In the Mehta Report, Dr. Mehta disclosed "the facts or data considered" in forming his opinion, as required by Fed. R. Civ. P. 26(a)(2)(B)(ii). Dr. Mehta disclosed the basis of his opinions, and further disclosed that he specifically considered, after "personal review," the following:

- MWAP Policy of 2017 and the amendment in 2018;
- First Amended Complaint in this matter;
- The Second Amended Complaint in this matter;
- The proposed Complaint in Intervention in this matter;
- 28 comprehensive patient charts (including for the 18 original representative plaintiffs and 10 additional putative class members selected to have a sampling of various medical conditions) including MWAP form requests between 2017-2021;
- Email Transcripts including discussion of MWAP requests and responses;
- MWAP and Chronic Pain Patient Reassessment records when completed in 2020;
- Expert Disclosures in this matter by DOCCS Chief Medical Officer ("CMO") Dr. John Morley, former CMO Dr. Carl Koenigsmann, Regional Medical Director ("RMD") Dr. Paula Bozer, RMD Dr. David Dinello, RMD Dr. John Hammer, and RMD Dr. Susan Mueller.

*See*, Ramage Decl. Exhibit. B, p. 3.

State Represented Defendants produced to Plaintiffs in discovery, *inter alia*, the medical charts Dr. Mehta reviewed for the 18 named Plaintiffs and 10 additional putative class members, as well as MWAP form requests between 2017 and 2021 for these individuals, along with their MWAP Reassessment forms and records when completed in 2020. Dr. Mehta also considered information contained within the records reviewed that referred to e-mails discussing MWAP Requests and responses. The Mehta Report did not identify the documents reviewed or considered by Bates-number.

On April 13, 2022, Plaintiffs' counsel requested that State Represented Defendants provide the Bates-numbers for certain of the documents reviewed in preparing Dr. Mehta's Report. In response, Assistant Attorney General ("AAG") Nia Stanford emailed the information requested. *See* e-mail dated April 13, 2022, attached as Exhibit D to the Ramage Declaration, with the message, "Please find attached the bates numbers/file names of the documents given to Dr. Mehta for his expert report." The email from AAG Stanford has two attachments: a multi-page list of Bates-numbers that correspond with emails previously produced to Plaintiffs in discovery (attached to the Ramage Declaration as Exhibit E; attached to the Declaration of Amy Jane Agnew, dated September 19, 2022 (the "Agnew Declaration"), as Exhibit 4) and a list of documents identified by Bates-numbers and file names relating to 28 Plaintiffs' or putative Plaintiffs' FHS1 Request and Recommendation Forms, Medical Records, and MWAP Forms that had also been previously produced to Plaintiffs in discovery (attached to the Ramage Declaration as Exhibit F; attached as Exhibit 5 to the Agnew Declaration).

Plaintiffs' counsel replied to AAG Stanford's email and requested Bates-numbers for the MWAP Reassessment forms Dr. Mehta reviewed. *See* e-mail dated April 13, 2022, attached as Exhibit F to the Ramage Declaration. AAG Stanford replied to Plaintiffs' counsel's e-mail,

indicating that Dr. Mehta was given "a closed set of reassessment forms." *See* e-mail dated April 14, 2022, attached as Exhibit L to the Ramage Declaration. This was the same set produced to Plaintiffs, and was easily identified by Bates-numbers. Plaintiffs' counsel then responded, seeking confirmation that "Dr. Mehta only had access to documents bearing bates numbers OAG MWAP 3232-3452 in terms of reassessment forms?" AAG Stanford confirmed that the Reassessment forms Dr. Mehta reviewed were limited to those in the Bates-number range identified by Plaintiffs' counsel. *See* email dated April 14, 2022, attached as Exhibit G to the Ramage Declaration.

The attachments to AAG Stanford's e-mails identified Bates-numbers for most of the documents listed, but "control numbers" for MWAP Forms. Plaintiffs' counsel emailed AAG Stanford to report that the "control numbers" could not be used by Plaintiffs to locate the documents. *See* e-mail dated April 13, 2022, attached as Exhibit G to the Ramage Declaration. AAG Stanford then traced the "control numbers," internal to Office of the Attorney General, to Bates-numbers, and sent Bates-numbers for some of the MWAP Forms identified, noting that the rest would be sent "later today or tomorrow." *See* e-mail dated April 14, 2022, attached as Exhibit H to the Ramage Declaration. AAG Stanford then sent a second set of Bates-numbers. *See* e-mail dated April 14, 2022, attached as Exhibit I to the Ramage Declaration.

As of April 14, 2022, State Represented Defendants believed that the identification of any documents that had been reviewed or considered by Dr. Mehta had not only been produced, but also identified specifically by Bates-number.

Dr. Mehta did not review or consider any documents consisting of e-mails between DOCCS providers, RMDs or a CMO and any outside specialists. *See* Dr. Neel Mehta, dated August 25, 2022, attached to Ramage Declaration as Exhibit J, p. 73. Neither did Dr. Mehta review any deposition transcripts. As set forth in the Declaration of Dr. Neel Mehta dated October 5, 2022,

when asked at his August 25, 2022, deposition whether he reviewed any "sworn testimony," or "sworn declarations or deposition testimony given by DOCCS doctors or outside consultants," and responded, "not outside consultants, but some of the DOCCS doctors" (*see* Mehta Dep., pp. 79-80, attached to Ramage Declaration as Exhibit M), he did not mean to say he reviewed transcripts of depositions.  And accordingly, when asked whether reading "deposition transcripts" formed the basis of his opinions or helped him reflect on the case, and responded, "yes" (*see* Mehta Dep., pp. 81-82, attached to Ramage Declaration as Exhibit M), he also did not mean to say he reviewed transcripts of depositions. Dr. Mehta reviewed "expert disclosures," as referenced on page 3 of his report (*see* Mehta Dep., p. 80, attached to Ramage Declaration as Exhibit M). In his October 5, 2022, Declaration, Dr. Mehta explains that he "understood that several medical professionals had their depositions taken in connection with this case, but did not review any transcript of any such deposition. In fact, I did not review transcripts of depositions of anyone in preparing my report or rebuttal report." (Ramage Decl. Exhibit N).

On June 17, 2022, Dr. Mehta was served with a subpoena seeking identification or production of a range of documents. The subpoena called for production or identification of documents disclosed in the Mehta Report and documents that had been identified as previously produced in the e-mail exchanges of April 2022. *See* Subpoena Duces Tecum, dated June 15, 2022, attached to the Ramage Declaration as Exhibit O.

In response to the subpoena, and in an attempt to reconfirm the identification of documents exchanged in April 2022, it was identified that the sets of documents that a former AAG from this Office had sent to Dr. Mehta were sent by OAG Cloud. It then became apparent that those OAG Cloud links had expired, and this Office could not re-review the specific documents made available to Dr. Mehta because the OAG Cloud links had expired. *See* Agnew Declaration, ¶ 25. As

regrettable as it is that the OAG Cloud links expired, State Represented Defendants made, and continue to make, efforts to identify the documents sent by the OAG Cloud. State Represented Defendants further maintain that, in accordance with Rule 26 obligations, we nevertheless have identified all documents that Dr. Mehta considered in drafting his Report. This was accomplished by including a list in the Mehta Report, by responding promptly to Plaintiffs' requests for the identification of the corresponding Bates-numbers for certain previously identified documents, and by responding to Plaintiffs' subpoena to Dr. Mehta. Moreover, following Dr. Mehta's deposition, State Represented Defendants continue to believe that all documents that Dr. Mehta had considered for the Mehta Report have been disclosed.

Plaintiffs now assert that the MWAP Reassessment forms bearing Bates-numbers OAG MWAP 3232-3452 were actually wrongly identified. However, there is no confusion as to identifying the MWAP Reassessment forms. While the Bates-range of the MWAP Reassessment forms was duplicative of MWAP Request Forms produced earlier in discovery, Plaintiffs do not assert that the error made identifying the documents difficult. *see* Agnew Declaration, ¶ 22; *see also* MWAP Request forms, attached as Exhibit 11 to Agnew Declaration. Plaintiffs themselves produced, under different Bates-numbers, documents that correspond to a "closed set" of MWAP Reassessment forms that Dr. Mehta reviewed from the DOCCS production. Moreover, Plaintiffs do not assert that they were prejudiced by the erroneous identification, or that Dr. Mehta reviewed a different "closed set" of Reassessment forms.[2] *See* closed set of MWAP Reassessment forms, attached to Ramage Declaration as Exhibit L. Accordingly, this set of MWAP Reassessment forms is the set that Dr. Mehta relied on and the set that was, in fact, disclosed.

---

[2]  The MWAP Reassessment forms, moreover, were not specifically sought through the subpoena. To the extent that the error prevented Plaintiffs from questioning Dr. Mehta, State Represented Defendants will offer Dr. Mehta for further questioning as to those documents. Plaintiffs rejected the offer to keep the deposition open, but preclusion of State Defendants' expert's opinions and testimony should not be the remedy.

Plaintiffs also assert that there is confusion as to the number of MWAP Request Forms Dr. Mehta considered. *Se*e Agnew Declaration, ¶¶ 35-36. Plaintiffs' assertions do not allege nondisclosure; rather, they suggest that spreadsheets created to organize the number of forms reviewed were inaccurate in their counts. Dr. Mehta himself created a spreadsheet in an attempt to "organize the material," *see* Mehta Dep., p. 48, but after documenting 159 forms, found that he needed to follow "another strategy" in order "to organize the data." *See* Mehta Dep., p. 55. This document, while incomplete, was nevertheless produced to Plaintiffs in response to their subpoena to Dr. Mehta, but without enough explanation to avoid the confusion it has since caused Plaintiffs' counsel. However, as Dr. Mehta disclosed in his report and State Defendants confirmed in subsequent disclosures, Dr. Mehta reviewed the forms correlating with all 28 of the incarcerated individuals who were the subjects of the Mehta Report. Moreover, Dr. Mehta concluded that he reviewed 202 such forms, a conclusion that reflected his count of "the way that they were sent to me and going through those numbers," and after making "sure that the AG's office agreed with me" as to the number. *See* Mehta Dep., pp. 55-56. Additionally, Dr. Mehta's review of the records helped lead to "the conclusion of [his] report "that individualized assessments were conducted under the MWAP policy regime." *See* Mehta Dep., p. 78.

State Represented Defendants' response to the subpoena directed at Dr. Mehta acknowledged that the expiration of earlier OAG Cloud links was unfortunate and, due to their expiration, it was difficult for this Office to definitively re-confirm the accuracy of the identification by Bates-numbers, previously accomplished in April, 2022. *See* State Represented Respondents' Letter dated September 1, 2022, in response to Plaintiffs' Order To Show Cause, dated August 23, 2022 (ECF # 418).

However, to our present knowledge, no document Dr. Mehta relied on, reviewed, or considered went undisclosed. Most of the documents identified in April 2022, and again in August 2022, were identified by their initial Bates-numbers. While certain MWAP Reassessment forms were erroneously identified by their initial Bates-numbers, instead of by their subsequent replacement Bates-numbers, they were not withheld from production and were not intentionally misidentified. *See* e-mail dated December 22, 2020, from A.J. Agnew, attached as Exhibit P to the Ramage Declaration. (pointing out duplication in Bates-ranges in State Represented Defendants' production).

## **ARGUMENT**

### **POINT I**

### **DEFENDANTS HAVE DISCLOSED THE FACTS AND DATA CONSIDERED BY DR. MEHTA IN FORMING HIS OPINIONS**

Fed. R Civ. P. Rule 26(a)(2)(B) requires disclosure of both a "complete statement" of the opinions of an expert witness and the facts or data the expert considered in forming their opinion. Fed. R. Civ. P. 26(a)(2)(B) "guards against the presentation of sketchy and vague expert reports that provide little guidance to the opposing party as to an expert's testimony." *Conte v. Newsday, Inc.*, No. 06-CV-4859, 2011 WL 2671216, at *4 (E.D.N.Y. July 7, 2011). This disclosure requirement is designed to prevent a party from raising unexpected or new evidence at trial. *Id.*; *Harkabi v. SanDisk Corp.,* No. 08-CV-8203, 2012 WL 2574717, at *3 (S.D.N.Y. June 20, 2012) ("The purpose of the expert disclosure rules is to avoid surprise or trial by ambush." (internal quotation marks omitted) ); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). Here, in addition to voluminous discovery, State Represented Defendants produced and disclosed documents considered by Dr. Mehta in drafting the Mehta Report. Those disclosures, as Plaintiffs acknowledge, included a list of medical records, a thirty-two page list of emails identified by

Bates-stamp, two lists of the MWAP Request Forms and a list of Reassessment Forms. (See Plaintiffs' Brief ("Pl. Brf."), p. 9). Additionally, prior to Dr. Mehta's deposition and in response to a subpoena by Plaintiffs' counsel, State Represented Defendants reproduced the requested disclosures that Dr. Mehta considered when drafting his opinion. (Agnew Decl. Exhibit 18). Plaintiffs generally concede that all materials relied upon by Dr. Mehta have been produced to them, but nonetheless contend in this motion that certain emails reviewed by Dr. Mehta have not been sufficiently identified, that the total number of MWAP and MWAP Reassessment Forms have not been sufficiently identified, and that certain testimony that they believe Dr. Mehta reviewed was not produced or identified.

We acknowledge that certain documents should have been identified to Plaintiffs more clearly and carefully at the outset and in some instances with additional explanation. We apologize to both Plaintiffs' counsel and to the Court for the confusion it has caused. We have further endeavored to address Plaintiffs' concerns regarding the reproduction or specific identification of every document referenced by Dr. Mehta. However, what remains at issue is only whether the allegedly insufficient identification of a small subset of these documents – specifically certain emails and MWAP Forms – render the disclosure so defective under Rule 26(a)(2)(B) that preclusion is warranted. We respectfully submit that deficiencies alleged by Plaintiffs do not meet this high standard and do not impinge on Plaintiffs' ability to avoid "surprise" or "trial by ambush."

First, Plaintiffs contend that a conclusive list of the 202 MWAP Forms considered by Dr. Mehta have not been produced. However, the record shows that those forms have been both produced and identified. In the Mehta Report, Dr. Mehta disclosed that he considered 202 MWAP Forms. (Ramage Decl. Exhibit B, p. 18). Shortly after the production of the Mehta Report, and explained in detail in the "Facts Related to Dr. Mehta's Expert Disclosures," *supra*, State

Represented Defendants produced the documents given to Dr. Mehta to consider in his report. A few months later, prior to his deposition and in response to Plaintiffs' subpoena (Ramage Dec. Exhibit M), Dr. Mehta produced a spreadsheet listing 159 MWAP Forms from mid-June of 2021 that he created while drafting his report. (Ramage Decl. Exhibit Q).

At Dr. Mehta's deposition, Plaintiffs presented a spreadsheet of 202 MWAP forms with corresponding Bates-numbers into evidence and showed them to Dr. Mehta. (Ramage Dec. Exhibit R). As Plaintiffs' counsel explained, "if you look at what I've marked as P6, and forgive me 'cause we bastardized this a little bit, those are the*, Bates numbers we got that corresponded to some control numbers* and I will say *this does add up to 202*." (Ramage Decl. Exhibit M, pp. 52,53) (emphasis added). When Plaintiffs' counsel asked Dr. Mehta why the number of MWAP forms were different from the spreadsheet that was produced by the State Represented Defendants, Dr. Mehta explained "[i]t's just that at some point I stopped trying to categorize through the spreadsheet and had to use a different format where I was now directly entering them into the report draft that I was creating simultaneously." (Ramage Decl. Exhibit M, p. 54).

Furthermore, a comparison of the spreadsheet provided by Dr. Mehta (Ramage Decl. Exhibit Q) and the spreadsheet produced by Plaintiffs (Ramage Decl. Exhibit R) reveals they are substantially similar. Dr. Mehta's spreadsheet appears to be just a subset of the spreadsheet presented by Plaintiffs in that the names of the patients, their medications, and the OAG MWAP numbers are similar on both spreadsheets. The only inconsistency between the two spreadsheets is the total number of MWAP Forms, which, as Dr. Mehta explained, is because it is an incomplete list. (Ramage Decl. Exhibit M, p. 54). This is wholly consistent with Dr. Mehta's testimony that the spreadsheet listing 159 MWAP forms was simply an incomplete working copy he was using

to track the MWAP Forms he was considering. He did not testify to ever creating a final copy with all 202 MWAP forms.

Therefore, Plaintiffs not only possessed a spreadsheet containing 202 MWAP forms with corresponding control and Bates-numbers, but they also presented those corresponding MWAP forms at the deposition. (Ramage Decl. Exhibit Q)(Ramage Decl. Exhibit M, p. 98). As explained in the "Facts" section, *supra*, any confusion stems from a poor method of tracking and labeling the certain documents, as admitted by this Office. However, the MWAP Forms were produced and sufficiently identified. As such, and contrary to Plaintiffs' allegations, there is a "conclusive list" of MWAPs considered by Dr. Mehta. Accordingly, with regard to the MWAP and Assessment Forms, there is simply no improper disclosure in violation of Rule 26.

As to the emails, to clarify what we understand to be Plaintiffs' argument, there are apparently two separate tranches of emails at issue; those referenced on page. 4 of the Mehta Report and those mentioned on page 12. As to the emails referenced on page 4, Dr. Mehta explained at his deposition that he reviewed a small batch of no more than two dozen internal DOCCS emails to "clarify what the case was about" and to provide a "snapshot to show that there was further discussion happening on medical decisions in these MWAP-type policies." (Ramage Decl. Exhibit M, pp. 34-35, 40). Unfortunately, despite several attempts by this Office, those referenced internal DOCCS emails that Dr. Mehta considered cannot be identified from the larger production of emails produced to Plaintiffs at this time. As explained above in "Facts," *supra*, the OAG Cloud link provided to Dr. Mehta which contained those emails cannot be accessed at this time. Steps have been taken, and are still being taken, to try to identify those particular emails. State Represented Defendants concede that fact and apologize. However, State Represented Defendants still respectfully argue that those referenced emails were for general background

information and to "clarify what the case was about." (Ramage Decl. Exhibit M, p. 34). As such, even though we have yet been unable to locate those specific emails, Dr. Mehta's inability to point to the exact emails that he considered does not lead to Plaintiffs being "surprised" or otherwise "ambushed" at trial because Plaintiffs have had the opportunity to question Dr. Mehta about the emails and to assess the weight he gave to those emails.

As to the emails referenced on page 12 of the Mehta Report, Dr. Mehta explained at his deposition that he was referring to email exchanges that were described within the MWAP forms themselves and did not review the originals of any emails referenced within MWAP forms. (Ramage Decl. Exhibit M, p. 74). As such, because the actual emails were not considered in the Mehta Report, there are no additional emails to disclose.

Third, there is no discrepancy regarding deposition transcripts or other testimony that Dr. Mehta considered. Dr. Mehta misspoke at his deposition when asked whether he had reviewed any transcripts of medical professionals' depositions. As explained in his Declaration, Dr. Mehta reviewed copies of the expert disclosures (as disclosed in the Mehta Report), but not transcripts of depositions. (Ramage Decl. Exhibit N). Simply put, Dr. Mehta did not consider any undisclosed testimony or transcripts.

## POINT II

## ANY DEFICIENCIES ARE HARMLESS BECAUSE PLAINTIFFS ARE NOT PREJUDICED

Most of the deficiencies raised by Plaintiffs in this motion are either based upon misunderstandings or have been addressed, and any remaining minor deficiencies in identification have not prejudiced Plaintiffs. As discussed, *supra*, Plaintiffs point to only three document categories that they claim cannot be identified with sufficient specificity: MWAP Request and Reassessment Forms, internal DOCCS emails, and transcripts. (Pl. Brf. p. 11). Even if the Court

decides that State Represented Defendants failed to provide sufficient disclosures of any of these categories of documents in violation of Rule 26, Plaintiffs have not been prejudiced by those deficiencies and they are considered harmless.

First, as discussed in Point I, Plaintiffs' arguments that the MWAP Request and Reassessment forms reviewed by Dr. Mehta were not sufficiently identified appears to be based upon a misunderstanding of a chart produced by Dr. Mehta in response to their subpoena, which he testified was not—and was not intended to be—a complete listing of all MWAP forms reviewed. As such, there is no prejudice because there was no deficient disclosure.

In any event, even if there was a discrepancy here, it would not prejudice Plaintiffs. The opinions Dr. Mehta expresses concerning these MWAP forms largely concerns their general existence and usage, as a whole, as applied to the decision-making processes involved in the MWAP approval process and DOCCS MWAP policy, generally and not the contents of any individual form. (Ramage Decl. Exhibit B, p. 20). Thus, whether he reviewed every MWAP form or only a large subset of those forms would not substantially impact the opinions expressed, and Plaintiffs' argument that they cannot challenge Dr. Mehta's conclusions unless they know the exact number of forms reviewed is thus completely unfounded. Plaintiffs have thus suffered no prejudice even if the disclosures concerning MWAP forms were assumed to be incomplete.

Second, Plaintiffs are not prejudiced by the inability of Dr. Mehta to identify which specific emails he reviewed. As conceded in Point I, *supra*, although we have not yet been able to identify those particular emails referenced in page 4 of the Mehta Report, the substance of the internal DOCCS emails referenced by Dr. Mehta were only used by him to provide background information and context. (Ramage Decl. Exhibit M, pp. 34-35, 40). Accordingly, Plaintiffs will

not be prejudiced or otherwise surprised at trial due to the inability to identify which specific emails Dr. Mehta reviewed.

As to the emails referenced on page 12 of his Original Report, Dr. Mehta explained at his deposition that he was referring to email exchanges described within the MWAP forms themselves and did not review any of those referenced emails. (Ramage Decl. Exhibit M, p. 74). As such, because the actual emails were not considered by Dr. Mehta in the Mehta Report, there are no such additional emails to disclose. Thus, the disclosure in this context was fully sufficient, and Plaintiffs at a minimum have suffered no prejudice.

Third and finally, as to the alleged missing transcripts, as explained in Point I, *supra*, Dr. Mehta clarified that he did not review any deposition transcripts or testimony, and that his reference at his deposition to transcripts was in error. (Ramage Decl. Exhibit N). As such, there is no undisclosed testimony or transcripts which Dr. Mehta considered and thus, no prejudice to Plaintiffs.

Any alleged inability to identify with specificity the exact number of forms reviewed or the specific emails read does not cause, as Plaintiffs claim, "severe prejudice" to their case, nor does it affect their ability to cross-examine or otherwise challenge Dr. Mehta on the basis of his opinions. This is especially true given the vast amount of disclosures and other materials Dr. Mehta considered when forming his opinion. (Ramage Decl. Exhibit B). Accordingly, Plaintiffs have not suffered actual prejudice and their motion should be denied.

## POINT III

## PRECLUSION IS NOT WARRANTED

Even if the Court finds that State Represented Defendants' disclosures did not satisfy Rule 26(a)(2)(B), and that the deficiencies were not harmless, nothing in Plaintiffs' motion warrants the extreme sanction of preclusion.

When determining whether to exclude expert testimony, the Second Circuit instructs that the Court should consider four factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)). "[P]reclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution." *Martinez v. Port Auth. of N.Y. & N.J.*, No. 1 Civ. 721, 2005 WL 2143333, at *14 (S.D.N.Y. Sept. 2, 2005). Preclusion should only be applied in cases where the party's conduct represents "flagrant bad faith" and "callous disregard" of the federal rules. *Olutosin v. Gunsett*, No. 14 Civ. 685, 2019 WL 5616889, at *4 (S.D.N.Y. Oct. 31, 2019) (citations omitted); *see also Hinton v. Patnaude*, No. 92 Civ. 405,  1995 WL 641957 (N.D.N.Y. Aug. 2, 1995). This is because precluding testimony of an expert, even when there has not been strict compliance with Rule 26, tends to frustrate "the Federal Rules' overarching objective of doing substantial justice to litigants." *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 277 (S.D.N.Y. 1998).

Initially, we respectfully submit that there was no "flagrant bad faith" or "callous disregard" for the Federal Rules that warrants the drastic sanction of preclusion here. As discussed above in Points I and II, *supra*, voluminous disclosures were made to Plaintiffs regarding the Mehta Report, (Ramage Decl. Exhibit B), and the vast majority of them are not challenged on this motion. The attempts by both State Represented Defendants and Dr. Mehta to produce, reproduce, identify, and retrieve every single page and document that Dr. Mehta considered in producing his Report show the exact opposite of "flagrant bad faith" and "callous disregard." Although

imperfect, the productions and disclosures by State Represented Defendants and Dr. Mehta were good faith attempts to comply with the letter and the spirit of full disclosure pursuant to Rule 26.

All four *Softel* factors also weigh heavily against preclusion. First, as discussed above, State Represented Defendants and Dr. Mehta have provided extensive facts and data regarding his opinions, and the few issues Plaintiffs raise on this motion are either based upon misunderstandings or are relatively minor, particularly given the scope of the report and opinions they seek to exclude. Any remaining deficiency is not due to bad faith or callous disregard for the Federal Rules or an Order of the Court.

Second, the testimony of Dr. Mehta is as vital to the defense of this case as the testimony of Plaintiffs' expert is to its prosecution. Preclusion of Defendants' expert would place a massive and unwarranted weight on the scale in favor of Plaintiffs that is completely out of proportion to the alleged deficiencies and prejudice that they argue in their motion.

Third, as discussed in detail in Point II, *supra*, the prejudice to the party to whom disclosure was made, in contrast, is minimal or even non-existent.

Finally, a continuance is easily permissible, and, indeed, not even necessary given the timing of this motion. Expert discovery is still ongoing and expert depositions still remain to be taken. State Represented Defendants have offered, and still offer, to recall Dr. Mehta for additional questioning by Plaintiffs. Furthermore, procedurally, this case is still in pre-certification discovery and it is a substantial distance from trial. There are several avenues the Court might take, other than preclusion, to ensure sufficient compliance with Rule 26. Accordingly, each of the four factors the Circuit entrusts the Court to consider weighs heavily against preclusion.

Furthermore, courts that have weighed preclusion indicate that exclusion of expert testimony is warranted only when the district court finds "serious flaws in reasoning or

methodology." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 at 43 (S.D.N.Y. 2016) (*quoting In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y.2009)). Otherwise, if an expert's testimony falls within "the range where experts might reasonably differ," the duty of determining the weight and sufficiency of the evidence on which the expert relied lies with the jury, rather than the trial court. *Kumho Tire, Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

In *Speedfit LLC v. Woodway USA, Inc.*, 13 Civ. 1276, 2019 WL 1436306, (E.D.N.Y. 2019), for example, the court ruled against preclusion even though the report suffered from several defects, including an incomplete list of documents the expert considered in generating his report. In denying preclusion, the court noted that the expert "at least considered the documents" and "defendant was on adequate notice as to 'the facts or data considered by' the expert in forming his opinions, as required by Rule 26." *Id*. at *4. The court further held that the expert's report "is sufficiently detailed to advise defendant of the required information under Rule 26." *Id*. at *4. Moreover, the discovery defects in that matter, which survived preclusion, are far greater than alleged here.

## POINT IV

## DR. MEHTA'S EXPERT TESTIMONY IS RELIABLE UNDER *DAUBERT*

Under *Daubert*, the Court exercises its gatekeeping function to guarantee that an expert witness's testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The goal of this inquiry is to ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). When weighing the reliability of a witness who provides opinions grounded in his specialized knowledge, "a district court 'may' consider the *Daubert* factors, i.e., whether an

expert's theory has been subject to peer review, or whether an expert's theory can be tested, 'where [such considerations] are reasonable measures of the reliability of expert testimony.'" *Id*. at 152. Thus, when deemed inappropriate in the context of the specifics of a particular case, "the *Daubert* factors will not be the measure of reliability." *Id*. at 142 ("[T]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.")

Here, Plaintiffs allege that, because of deficient disclosure, Dr. Mehta's testimony is not grounded in sufficient facts and data to determine whether it is the product of principles in methods sufficient to satisfy the requirements of *Daubert*. Specifically, Plaintiffs allege that Dr. Mehta's Report and subsequent testimony lack a "reliable foundation." (Pl. Brf., p. 9). Plaintiffs' argument is baseless. As the Second Circuit explains, "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible," and a judge should only exclude evidence if the flaw is large enough that the expert lacks "good grounds" for their conclusions. *Amorgianos v. National R. R. Passenger Corp*., 303 F.3d 256, 267 (2d Cir. 2002). This high bar accords with "the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id*. at 267. As the Supreme Court has explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

That is exactly the case here. The inability to identify certain documents from the entire production may undermine Dr. Mehta's ability to defend his opinion, but is does not render it unreliable under *Daubert*, especially since those documents were but a portion of the materials he

relied on when forming his opinion. (Ramage Decl. Exhibit B). Plaintiffs are free to vigorously cross-examine and present alternative evidence to challenge Dr. Mehta's conclusions. But any flaw in disclosure goes directly to the weight, not the admissibility, of Dr. Mehta's Report and testimony.

In any event, Plaintiffs' request for either a ruling or hearing pursuant to *Daubert* is premature. Discovery in this case has not concluded, and expert depositions are still ongoing. As such, any ruling or subsequent *Daubert* hearing should be deferred until the appropriate time.

**POINT V**

**THERE ARE NO COLORABLE GROUNDS TO PRECLUDE THE OPINIONS EXPRESSED IN THE REBUTTAL REPORT**

"Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove evidence of the adverse party." *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 CV 1851, 2008 WL 4911440, * 2 (E.D.N.Y. Nov. 13, 2008) (*quoting Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004). Furthermore, an expert rebuttal report "does exactly what it says: it rebuts, in the form of a complete statement of all of the opinions expressed by the author, the report of the opposing party's expert*." Long Term Capital Holdings v. United States*, No. 01 CV 1290, 2003 WL 21518555, at *2 (D. Conn. May 15, 2003). Here, the Rebuttal Report directly repels, counteracts, and disproves the opinions expressed by Dr. Carinci. Nevertheless, Plaintiffs allege that certain parts of the Rebuttal Report should be stricken because they rely on undisclosed facts, do not rebut relevant portions of the Carinci Report, and contain irrelevant and improper legal conclusions. As explained below, each of the reasons proffered is baseless and preclusion of the Rebuttal Report should be denied.

### A.  The Rebuttal Report Is Reliable

Plaintiffs broadly allege that the Rebuttal Report is based on the same allegedly undisclosed facts as the Mehta Report. However, as explained above in Point I, *supra*, neither the Mehta Report nor his Rebuttal Report relied on insufficiently disclosed facts or data. Furthermore, Plaintiffs do not point to any particular section of the Rebuttal Report that supposedly relies on "undisclosed facts" in violation of Rule 26(a)(2). Instead, Plaintiffs merely point to alleged "gratuitous comments" within the Rebuttal Report, which state that DOCCS providers were "passionate and emphatic" when discussing medical treatment. (Pl. Brf., p. 19). This, however, is a direct rebuttal to Dr. Carinci's own comments that there was instead "confusion, misguidance and frank chaos" in such discussions. (Ramage Decl. Exhibit C, p. 19). In practice we agree that neither expert's opinion regarding the tone of the underlying communications is likely to be admissible at trial, but, again, there are no grounds for the Court to allow Dr. Carinci to testify to such issues without rebuttal from Dr. Mehta. Accordingly, there are no undisclosed facts alleged by Plaintiffs that render the Rebuttal Report unreliable, and the entire Report and Rebuttal Report should be admitted.

### B.  The Rebuttal Report Properly Rebuts Dr. Carinci's Report

Plaintiffs' assertions that the Rebuttal Report goes beyond rebutting Dr. Carinci's report are also baseless. Plaintiffs essentially are arguing that the data and materials that Dr. Carinci relied upon when forming his conclusions cannot be critiqued in the Rebuttal Report. But analysis of the foundational evidence upon which an expert report relies is, of course, part of rebutting its conclusions – in fact, this is a core argument of the balance of Plaintiffs' motion. And in Plaintiffs' Report, Dr. Carinci relied on curated and selected summations presented to him by Plaintiffs' legal team. As Dr. Carinci explained, "[d]ue to the unmanageable number of documents, the legal team

created subsets of important documents pulled from each patient's voluminous records." (Ramage Decl. Exhibit C, pg. 9). Furthermore, Plaintiffs' legal team "wrote a synopsis of these medical records" which Plaintiffs' expert proceeded to "thoroughly reviewed the medical documents and curated document set for each patient" to reach his conclusions. (*Id.* pg. 9). In short, Dr. Carinci's report is based not on the materials and documents themselves, but upon the materials and documents provided to him by Plaintiffs' legal team. Dr. Mehta explains that, in his expert opinion Dr. Carinci's use of the selective documents and written synopses prepared by Plaintiffs' own counsel to form his opinions, rather than review of the source materials themselves, renders his conclusions invalid or otherwise questionable is central to the defense, and a proper subject for rebuttal.

### C. The Rebuttal Report Does Not Raise Irrelevant Material or Improper Conclusions

Plaintiffs further allege that the Rebuttal Report raises improper conclusions and material. That claim is likewise without merit. First, Plaintiffs allege that the Rebuttal Report "attempts to usurp the role of the finder of fact" by offering "legal conclusions." (Pl. Brf., p. 20). However, the Rebuttal Report's finding of an appropriate standard of individualized care with no indication of deliberate indifference is a direct rebuttal to Plaintiffs' expert who concluded that RMDs were not providing the appropriate "standard of care." (Ramage Decl. Exhibit C, p. 42). Such a rebuttal is not a "legal conclusion" or an attempt to "usurp the role of the finder of fact," but a direct response to the conclusions of Plaintiffs' expert. As such, the opinion is relevant and admissible.

In any event, to the extent Plaintiffs now move this Court to bar testimony based on "legal conclusions," such a request is premature. Defendants have not moved to admit any particular expert testimony at trial or seek to admit expert testimony as to "deliberate indifference." Accordingly, any ruling on admission of trial testimony should be decided pursuant to a motion *in*

*limine* at such time that such testimony is sought to be introduced, or should be deferred at least until such time as expert discovery is concluded. *See Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) (discussing admissibility of expert legal conclusions at trial), *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

Next, allegations that the Rebuttal Report contains conclusions that don't "fit" is also without merit. Plaintiffs' own expert opined and concluded that the "MWAP policy as implemented did not meet the standard of care" and "[o]versight by DOCCS administrators was lacking and inadequate." (Ramage Decl. Exhibit C, pp. 42, 43). In his Rebuttal Report, Dr. Mehta reviewed the same data and concluded otherwise. Such conclusions are not "conjectures and guesses," but a direct response to Dr. Carinci's findings about the same MWAP policy. As such, it is entirely relevant and admissible.

As shown above, the conclusions and opinions contained in the Rebuttal Report either explains, counters, or disproves specific conclusions reached in the Carinci Report. Furthermore, the Rebuttal Report is based on reliable data, does not contain irrelevant or improper conclusions material. Accordingly, Plaintiffs' allegations are without merit and their requests for preclusion, in whole or in part, should be denied.

## **CONCLUSION**

For all the foregoing reasons, State Represented Defendants respectfully request that this Court deny Plaintiffs' motion in its entirety.

Dated: New York, New York
        October 5, 2022

                            Respectfully submitted,
                            LETITIA JAMES
                            Attorney General of the
                            State of New York
                            *Attorney for Defendants*

                    By:

22

*Michael J. Keane*
*Ian Ramage*
Michael J. Keane
Ian Ramage
Assistant Attorneys General
28 Liberty Street
New York, New York 10005
(212) 416-8550
Michael.Keane@ag.ny.gov
Ian.Ramage@ag.ny.gov