```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PETER ALLEN, et al.,

                Plaintiffs,

           v.                               19 CV 08173 (LAP)
                                            Telephone Conference
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                Defendants.

------------------------------x
                                            New York, N.Y.
                                            January 5, 2023
                                            9:00 a.m.
Before:

                  HON. LORETTA A. PRESKA,

                                            District Judge

                         APPEARANCES

LAW OFFICE OF AMY JANE AGNEW PC
     Attorneys for Plaintiffs
BY:  AMY JANE AGNEW
     JOSHUA LEE MORRISON

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
     Attorneys for Defendants
BY:  MICHAEL JAMES KEANE
     IAN RAMAGE

WHITEMAN OSTERMAN & HANNA LLP
     Attorneys for Defendant Dr. Carol Moores
BY:  ORIANA L. KILEY
     WILLIAM S. NOLAN
     GABRIELLA LEVINE
     JENNIFER MARIE THOMAS
```

|     |     |
| --- | --- |
| 1   | (The Court and all parties appearing telephonically) |
| 2   | THE COURT:  Good morning, counsel. |
| 3   | COUNSEL:  Good morning, your Honor. |
| 4   | THE COURT:  Happy New Year. |
| 5   | COUNSEL:  Happy New Year, your Honor. |
| 6   | THE COURT:  Who is on for plaintiffs? |
| 7   | MS. AGNEW:  Good morning, your Honor.  AJ Agnew, and |
| 8   | with me is Mr. Morrison. |
| 9   | MR. MORRISON:  Good morning. |
| 10  | THE COURT:  Happy New Year. |
| 11  | Who is on for Dr. Moores? |
| 12  | MS. KILEY:  Good morning, your Honor.  Oriana Kiley. |
| 13  | I'm joined by Will Nolan, Gabriella Levine, and Jennifer |
| 14  | Thomas. |
| 15  | THE COURT:  Good morning, ladies and gentlemen.  Happy |
| 16  | New Year. |
| 17  | Who else is on, please? |
| 18  | MR. KEANE:  From the Attorney General's Office, |
| 19  | Michael Keane. |
| 20  | THE COURT:  Good morning, Mr. Keane.  Happy New Year. |
| 21  | MR. KEANE:  Thank you.  Same to you. |
| 22  | THE COURT:  Anybody else? |
| 23  | MR. RAMAGE:  Yes, your Honor.  Ian Ramage, also from |
| 24  | the Attorney General's Office.  Good morning. |
| 25  | THE COURT:  Yes, sir, good morning.  Happy New Year. |

And, Andrew, good morning, Mr. Reporter.

(Pause)

THE COURT:  Okay, friends.  I have your letters, of course.  I thought we were pretty clear, in the transcript of our argument a couple of weeks ago, that the issue on the table is moot.  I appreciate what Ms. Kiley wrote to the effect that we discussed irreparable injury, but we all agree that deprivation of a constitutional right constitutes irreparable injury.

So, the question is:  Is there a deprivation?  That is, of course, tied up in the defendants' defense of mootness.  And as the Court pointed out at page 21 of the transcript, to prevail on a defense of mootness, there are three issues that have to be addressed.  So, that's what I foresee in our February 6th hearing.

Is there any question about that?

MS. KILEY:  Yes, your Honor.  This is Oriana Kiley.

Respectfully, what's still not clear to me is that if the Court is still unsure if whether or not plaintiffs have established a deprivation, then it would follow that they haven't made a prima facie case of irreparable harm.  Therefore, at the hearing, we would assume that they would have the burden to establish that burden, and then it would turn to us to put on evidence in opposition surrounding the issue of mootness.

            That's where I'm not clear because the Court did not expressly state that plaintiffs have met their burden.

            THE COURT:  Ms. Agnew?

            MS. AGNEW:  Your Honor, I do believe in my letter, I supplied the case law, which I believe your transcript tracked impeccably — not to suck up to the Court first thing in the morning — but I believe that the entire hearing is about the voluntary cessation doctrine, and it's certainly defendants' burden to prove the prongs of the doctrine; therefore, they start the hearing.

            THE COURT:  Ms. Kiley?

            MS. KILEY:  Yes, your Honor.

            All of the cases cited by Ms. Agnew certainly discuss the prongs of voluntary cessation, and we appreciate that. Only one of the cases actually refer to a hearing that was conducted on mootness; however, that hearing in the Nike case was as to subject matter jurisdiction and not with respect to the preliminary injunction.  None of these cases talk about whose burden it would be at a hearing.  Again, respectfully, we think that if the Court has not made it clear that plaintiffs have established their initial burden, that they be the first to go on to present their case to establish their burden, and then it would turn to us to present evidence on cessation.

            THE COURT:  Ms. Agnew, what do you say about irreparable injury?

MS. AGNEW:  Well, your Honor, we did brief that.  Like I said, I think that the law is conclusive when there are constitutional violations, and we certainly put forth evidence that those were ongoing, including the treatment of Aaron Dockery, which defendants' counsel very ably handled and got him treated again, but these are happening repeatedly in these prisons, and that's what the case is about, and I think that our evidence on the papers, which I understand will be mingled with the evidence presented at the hearing or for the Court's consideration, we've met that burden already.  We're going to meet it again when we rebut the defendants' case, but they have the burden walking into this hearing, your Honor.

THE COURT:  Anything else, Ms. Kiley?

MS. KILEY:  Your Honor, the Court -- the last time we were on the call, two week ago, the Court denied our 12(b)(1) already, and that is where we argued mootness.  We did not argue mootness with respect to irreparable harm.

THE COURT:  I don't know what that means.

The point is that defendant, as a defense, argued mootness, but in so doing, they didn't address the three prongs of the mootness test.  That's why we are undertaking this hearing.  And as I pointed out in the transcript, the question will be whether the conduct complained of has, in fact, ceased, whether there is a reasonable expectation that the violations will recur, and whether policy 1.24A completely and irrevocably

eradicated the effect of the MWAP policy.  Those are the issues at stake in the hearing.  That's the question of fact that has to be addressed.

That being said, that means that defendants go first in demonstrating mootness by demonstrating those three points.  Plaintiffs go next in rebutting those three points.

With respect to the papers, certainly, plaintiffs have established irreparable injury in that they say that the violations are ongoing; you say, no, they're not, mootness, and, therefore, you have the burden.  So that's the way we'll go.

To the extent that there is argument about how soon the witness list has to be disclosed — now, I'm not sure that disclosure is necessary, but, of course, it makes a lot of sense in terms of efficiency — I take plaintiffs' point that if they designate three people to testify, and then defendants resume the medications for those three people, then we're going to be back in this slop again.  So, I'm not sure why it is insufficient to have the designations on January 18th.

Ms. Kiley?

MS. KILEY:  Yes, your Honor.

As we know, this case has been going on for three years.  There are over a hundreds of thousands of pages of documents to go through and to be prepared for to present to the Court.  As I mentioned in my letter, plaintiffs'

disclosures include over 600 individuals that they may select to present at the hearing.  We just don't think that two weeks and change is enough time to prepare for this type of hearing.

We'd note that since the middle of November, plaintiffs have mentioned that they are preparing for evidentiary hearings.  We would ask the Court to afford us the same opportunity to prepare for our opposition.

THE COURT:  Okay.  Let me just ask this:  I suspect that plaintiffs do not intend to call 600 witnesses.

Ms. Agnew, what is the approximate number of witnesses you intend to call?

MS. AGNEW:  So, your Honor, at this juncture, we have identified patients who have never been individually assessed or treated.  We believe that that will be the body of our rebuttal evidence.  As you mentioned, we're in an unenviable position, and I will just give an example.  Last night, we got a letter from Ronald Diggs, who's one of the patients who is highlighted in our papers.  Mr. Diggs, after Defendant Moores, went to Shawangunk, was sent out to pain management again.  He just got back.  The pain management doctor has recommended the Lyrica, which we have been asking for for two years now.  It's to be seen whether or not DOCCS gets back together and prescribes the Lyrica.  If he's prescribed the Lyrica in the next two weeks, I would argue that he's not a great patient for us.  I don't think that that means defendants prevail on this

1    upcoming hearing, because we have other patients.  So, where
2    we're going --
3            THE COURT:  Ms. Agnew, may I ask you --
4            MS. AGNEW:  Of course.
5            THE COURT:  -- I didn't understand the word you said,
6    I would argue that he is -- oh, is not a great patient; is that
7    what you said?
8            MS. AGNEW:  Yes, yes.  I apologize, your Honor.  Yes,
9    because he's going to get on the stand and say, great, I got my
10   medication a week ago, right?
11           THE COURT:  Right.
12           MS. AGNEW:  And I think that's wonderful for
13   Mr. Diggs, and that's what I wanted, and that's why I've been
14   fighting this case.  But we do have a number of patients who we
15   know are not going to get that over the next two weeks, three
16   weeks.  So, in fairness to defendants, what we want to do is
17   sit down on January 18th, and we're going to give them a list
18   of ten.  Then, at the hearing, because we need to block out --
19   there are video rooms, as your Honor is aware — they're used
20   for probation hearings and all sorts of things — we're going to
21   block out the video, and then we're going to have to make some
22   discrete choices in the days right before the hearing about who
23   we actually call.
24           And we're not trying to be --
25           THE COURT:  Let me interrupt you.

1           So, you're saying that on January 18, you're going to
2   designate ten people, some of whom you will actually call?
3           MS. AGNEW:  That's correct.
4           THE COURT:  Okay.  Why is that insufficient,
5   Ms. Kiley?
6           MR. NOLAN:  Your Honor, this is Will Nolan, for
7   Dr. Moores.  If it's okay, I wanted to answer that question.
8           I think this sort of highlights, the point about
9   Mr. Diggs sort of highlights, what we're dealing with.  We're
10  looking at this, and we're trying to sort of take a stab in the
11  dark at who we're supposed to point out is being sufficiently
12  treated.  And there are thousands and thousands of patients,
13  and where we're struggling is are we supposed to look at every
14  single one and say every single one is being treated and is
15  that our burden, or are we supposed to respond to the evidence
16  that Ms. Agnew is going to offer upfront?  This is why we
17  thought that the burden of proof was important because we
18  haven't seen a single patient that's been identified where the
19  Court has said, yes, he's not your burden, and now we have to
20  look at mootness.  We're trying to ascertain what evidence the
21  Court is expecting of us.  Are we supposed to prove upfront
22  that these ten patients are being treated adequately, or what
23  sort of evidence is the Court actually looking for from us,
24  because, certainly, we can't prove a negative by looking at
25  every single individual at DOCCS and saying they are being

treated perfectly. That's why we thought that the burden shifting would be more appropriately put on the plaintiff.

But we're happy to work with them. Certainly, if we can identify ten patients that we can look at and address upfront at the hearing, we're happy to do that. I think that's what we're really struggling with here, Judge.

THE COURT: In your papers on the motion, you made the argument that because of the policy 1.24A, all of plaintiffs' claims were moot. As I mentioned, in so arguing, you didn't address the three prongs of mootness. But the papers, including Dr. Moores' declaration, laid out an argument for why the case was moot. How you prove that the case is moot is up to you. It's probably not a one-patient or all-patient sort of presentation, but, in your papers on the motion, you chose to do it through Dr. Moores' declaration.

So, however you want to prove that the conduct complained of has, in fact, ceased, there's a reasonable expectation that the violations won't recur, and the policy had completely and irrevocably eradicated the effect of MWAP, that's up to you. So I can't tell you how to prove it. I mean, you took steps in the papers to show it, and plaintiffs then put in contrary evidence sufficient to raise an issue of fact on the question of mootness.

So, I don't know that it's going to help for you to show that 600 people have been treated or ten people have been

1  treated.

2          MR. KEANE:  Okay, your Honor, I understand.

3          One thing that I think would be helpful is one of the
4  things we're going to need to do is coordinate witnesses to
5  rebut what the plaintiff is saying in rebuttal to our case, in
6  essence, but if we don't know now who those individuals are — I
7  mean, we can glean from that, but, certainly, in your Honor's
8  decision, there's no indication of any specific patients that
9  we have to respond to or that any specific patients have
10 suffered or about to suffer any irreparable harm — we would ask
11 for a period of time within which we would be able to
12 coordinate those rebuttal witnesses and put them on, not be
13 expected to do that on February 6th.  That's all we're asking.

14         THE COURT:  There is not going to be an adjournment.

15         And, again, counsel, I'm not sure -- I haven't seen
16 the evidence, so I can't say at this point, but I'm not sure
17 it's going to be sufficient.  Let's say Ms. Agnew decides to
18 put five people on, and they say, I haven't been treated, they
19 say, when I transferred to X facility, I was told, oh, we don't
20 prescribe your prescribed medication here, and then
21 miraculously, the night before the hearing, that person gets
22 prescribed.  I'm not sure that that is sufficient.  I don't
23 know if it is or it isn't, but I'm not sure it is.

24         So, I'm not sure how you plan to rebut it anyway.
25 Maybe you say as to some of these people, well, they shouldn't

have been getting that anyway, that prescription anyway, but it might well be that your rebuttal is more of a system-wide rebuttal, I don't know.

MR. KEANE: Your Honor, I guess we're not asking for an adjournment of the February 6th date — certainly we're going to present evidence on that date — but we expect that Ms. Agnew is going to come in with very specific individuals who are going to say, I'm not getting what I need. And we would like the opportunity to be able to identify the medical providers who can say the reason they're not getting this alleged prescription is because of X, Y, and Z, not because of any underlying policy, not because of any wrongdoing, but because in our medical judgment, it's certainly appropriate not to have this person on this drug at this time.

And that's what we want the opportunity to do. We can't do that unless we know exactly who the individuals are. We're shooting in the dark here, which, I think, is fundamentally unfair.

THE COURT: You're going to know that on January 18, counsel. That's what we've already decided today.

MR. KEANE: I understand that, your Honor, but to expect us on January 18th to turn around and get witnesses either to the Southern District or to appear on February 6th, I think is fundamentally unfair.

THE COURT: Ms. Agnew?

MS. AGNEW:  Your Honor, I'm trying here.  We are all big boy and girl litigators.  That is how litigation works.  I do this for every evidentiary hearing.  I'm a little bit at a loss as to the desire for handholding.  You have all the papers.  I'm going to give you ten people.  Read their documents, issue your subpoenas.  This is how it goes.

THE COURT:  Counsel, I'm not sure why the identification of the ten witnesses is not sufficient for you to prepare.  Certainly, you have at your disposal the medical records of those ten people.  Probably you've already been alerted to their issues.  I'm not sure why this is insufficient.

MR. KEANE:  Well, we don't know who these ten people are, your Honor.  We still don't know.

THE COURT:  You will know on January 18.  The hearing is not until February 6th.

MR. KEANE:  My point, your Honor, is simply that if we subpoena people that are not available, or if they're out or if they're on leave, we would simply ask for the ability to be able to produce those witnesses in due course if they're not available on February 6th.  We still don't know who they are because plaintiff has not identified the ten witnesses that they claim, and they keep changing.  They've changed multiple times.

MS. AGNEW:  If your clients would just treat them,

1    there wouldn't be a list.  But I'm going to tell you, I've
2    produced to you schedules of patients.  If you look at those
3    records, you can tell who's getting treated and who's not.
4    That is going to boil it down to about 25 people.
5             So, I would spend some time looking at the records,
6    and you're going to know who I'm going to call.
7             MR. KEANE:  Who are those 25 people?  Can you identify
8    those 25 people for us now?
9             THE COURT:  Do I have to be present for this?
10            MR. KEANE:  Your Honor, I think it's fundamentally
11   unfair for us to be required to have witnesses available on
12   February 6th with the hearing on a statewide DOCCS injunction
13   on how we're prescribing medicine is at issue.  This is a major
14   issue, and for us to be required to guess at who the witnesses
15   the plaintiffs are going to produce right now, not know then
16   until January 18th, when Ms. Agnew is ready to meet and confer,
17   again, we would just ask for some semblance of the ability to
18   respond to that.  Two weeks is not enough time to coordinate a
19   statewide response to --
20            MS. AGNEW:  Your Honor, your Honor, if I may.  We'll
21   do this, your Honor, because I'm a good sport.  By close of
22   business today, I'm going to give them a list of 25 patients.
23            THE COURT:  Okay.  You're going to narrow it down --
24            MS. AGNEW:  And then on January 18th -- we're going to
25   follow up with our clients, we're going to see who's gotten

|   |   |
|---|---|
| 1 | treated -- let's all pray it's all 25, that would be great.  I |
| 2 | don't think it's going to be, unfortunately.  But I'm going to |
| 3 | do this:  We're going to give you a listing of 25.  You guys |
| 4 | get to work and prepare your case. |
| 5 |       MR. KEANE:  I'd appreciate that.  That's sufficient. |
| 6 | That's fine. |
| 7 |       MS. AGNEW:  Good. |
| 8 |       THE COURT:  What else do we have to discuss, friends? |
| 9 |       MS. AGNEW:  Your Honor, just to close the loop on the |
| 10 | video room, what Mr. Morrison and I would like to do is send |
| 11 | some proposed orders to you just to lock in a video room at a |
| 12 | couple of facilities for those dates, and then we will, as soon |
| 13 | as we possibly know whether or not we're going to use it, let |
| 14 | the facility know because we're not trying to burden them, but, |
| 15 | at the same time, we will run into the situation where we have |
| 16 | a hearing, and they say, no, somebody else has an arraignment, |
| 17 | and we do want to be prepared, your Honor. |
| 18 |       THE COURT:  Okay.  That's all right with you, right, |
| 19 | Mr. Nolan? |
| 20 |       Mr. Nolan, that's okay with you, right? |
| 21 |       MR. KEANE:  Yes. |
| 22 |       THE COURT:  Thank you. |
| 23 |       Send those in as soon as you can, Ms. Agnew. |
| 24 |       MS. AGNEW:  I will. |
| 25 |       And, your Honor, we do plan on issuing two writs of |

1    habeas corpus ad testificandum for two of the representative
2    plaintiffs.
3              THE COURT:  To bring them in or what?
4              MS. AGNEW:  Yes, yes.  So we'd like to bring in and
5    take notes, defendants' counsel.  We're going to bring in Aaron
6    Dockery and Mark Daniels, if that's okay with the Court, and
7    both of them can endure the trip, and, in fact, Mr. Dockery is
8    set to be released -- may be released by the time of the
9    hearing, in which case the writ will not be necessary, but we
10   do want to have the representative plaintiffs there for a
11   number of reasons.
12             THE COURT:  Okay.  Go ahead and get that paperwork
13   together.  Back in the day — and counsel for the defense, you
14   will remind me — it was Barbara Lenox — that's not her name,
15   but you know who I mean — who would have coordinated the travel
16   and the arrangements here in the city.
17             Do you remember who I mean?
18             MR. KEANE:  Yes, your Honor.  That's Barbara Maddox.
19             THE COURT:  Thank you, Mr. Keane.
20             I don't know who the analogous person is now, but
21   let's get it organized so that we don't have any glitches.
22             MR. KEANE:  We will look into that, your Honor.
23             THE COURT:  Thanks so much.
24             Who is the new Barbara Maddox, please?
25             MR. KEANE:  There really isn't a new Barbara Maddox.

It falls upon all of us.  We have a deputy bureau chief, Brenda Cooke, who comes to us from various positions in the city.  So, she would ultimately be responsible, but Mr. Ramage, Central CI, and others can figure this out.

THE COURT:  Okay.  Thanks very much.  I still miss Ms. Maddox.

Anything else today, friends?

MS. AGNEW:  Not from plaintiffs, your Honor.

MS. KILEY:  Your Honor, this is Oriana Kiley.

One last issue:  Since we've now come to an agreement about exchange of witness lists, we would ask that the Court impose a date by which counsel need to exchange exhibits.

MS. AGNEW:  It's not happening, your Honor.  I'm sorry, that's not happening.  They have all their medical records.  That's not how an evidentiary hearing works.  You're going to know who the 25 people are.  Pull their records.  I mean, I'm not their paralegal, your Honor.  Forgive me, I'm getting a little frustrated.

THE COURT:  Ms. Kiley?

MS. KILEY:  So, do we take this to mean the only records that are going to be exchanged in this hearing are strictly medical records and nothing outside of medical records, such as disciplinary records or anything else?

THE COURT:  Ms. Agnew?

MS. AGNEW:  Your Honor, this is an evidentiary

Case 1:19-cv-08173-LAP   Document 508   Filed 01/23/23   Page 18 of 18        18
N15KALLC

1   hearing.  They have the burden.  They're putting on a case.  I
2   am rebutting the case and will use those exhibits that I think
3   are necessary to meet my case.  Whatever I choose to use,
4   they'll have a copy at the hearing, as in any other evidentiary
5   hearing.  We're very good about that.
6           THE COURT:  All right.
7           One more thing, friends:  Why don't you make an
8   appointment with the audiovisual people in the courthouse to
9   come in in advance, and to be sure all of the technology is
10  working, particularly the videos to the facility, but also
11  whatever you need to present your documents.  So, just make an
12  appointment with them.  We will let them know that you will be
13  calling them.
14          Anything else today, friends?
15          MS. KILEY:  Not for Dr. Moores.
16          MS. AGNEW:  No.  Thank you for your time, your Honor.
17          THE COURT:  All right, friends.  Thank you.  Happy New
18  Year.
19          (Pause)
20          THE COURT:  Good morning.  Happy New Year, everyone.
21          COUNSEL:  Thank you.
22                              * * *

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300