UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER ALLEN, et al.,<br><br>               Plaintiffs,<br><br>-against-<br><br>CARL KOENIGSMANN, et al.,<br><br>               Defendants. | No. 19-CV-8173 (LAP)<br><br>OPINION & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Plaintiffs' motion for class certification.[1] The State Represented Defendants ("SRDs"),[2] Non-State Represented Defendants ("NSRDs"),[3] and DOCCS Chief Medical

---

[1] (Notice of Motion for Class Certification, dated May 12, 2022 [dkt. no. 346]; Declaration of Amy Jane Agnew ("Agnew Decl."), dated May 16, 2022 [dkt. no. 367]; Plaintiff and Plaintiff-Intervenors' Memorandum of Law in Support of Motion for Class Certification ("Pl. Br."), dated May 19, 2022 [dkt. no. 371]; Reply Declaration of Amy Jane Agnew, dated December 15, 2022 [dkt. no. 483]; Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certifications ("Pl. Reply"), dated December 15, 2022 [dkt. no. 484].)

[2] (SRDs' Memorandum of Law in Opposition to Plaintiffs' Motion to Certify a Class ("SRD Opp."), dated November 15, 2022 [dkt. no. 457]; Declaration of Michael J. Keane in Support of SRDs' Motion in Opposition, dated November 15, 2022 [dkt. no. 458]. The SRDs include Defendants Carl Koenigsmann, John Morley, Susan Mueller, David S. Dinello, John Hammer, and Kristin Salotti. [SRD Opp. at 1.])

[3] (Declaration of Ryan E. Manley, dated November 18, 2022 [dkt. no. 462]; Defendants Angola, Gusman, Lee, Mantaro, Braselmann, Karandy, Acrish and Ashongs' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("NSRD Opp."), dated November 18, 2022 [dkt. no. 463].)

1

Officer, Dr. Carol Moores,[4] oppose the motion. For the reasons below, Plaintiffs' motion is granted in part and denied in part.

## I. Background

On May 12, 2022, Plaintiffs filed their first motion for class certification. Plaintiffs seek certification of two classes to "address the unconstitutional violations caused by implementation of the MWAP Policy:" a liability class pursuant to Fed. R. Civ. P. 23(b)(1)-(3) and 23(c)(4) and an injunctive class pursuant to Rule 23(b)(2). (Pl. Br. at 7.) Plaintiffs define the liability class as:

> [a]ll incarcerated individuals in the care and custody of the New York State Department of Corrections and Community Supervision who suffered or will suffer from chronic pain and/or neuropathies for whom medications defined as Medication with Abuse Potential ("MWAP") were denied or discontinued without an individualized assessment of medical need or efficacy.

(Id.) The SRDs and NSRDs oppose certification of the liability class.

Plaintiffs define the injunctive class as:

> [a]ll incarcerated individuals who are or will be in the care and custody of the New York State Department of Corrections and Community Supervision who suffer or will suffer from chronic pain and/or neuropathies who require individualized assessments of medical need for treatment with MWAP medications.

---

[4] (Defendant Moores' Memorandum of Law in Opposition to Motion for Class Certification ("Moores Opp."), dated November 15, 2022 [dkt. no. 450.]; Declaration of Carol A. Moores, M.D. ("Moores Decl."), dated November 14, 2022 [dkt. nos. 489-491].)

2

(Id.) Dr. Moores opposes certification of the injunctive class.

Plaintiffs propose that the Class Period:

> start June 1, 2015 and extends to the date on which the New York State Department of Corrections and Community Supervision, through its Chief Medical Officer, is enjoined from, or otherwise ceases, allowing the policy, practice and custom of denying or discontinuing MWAP treatment to incarcerated individuals without medical justification and undertakes real and substantial efforts to remediate the constitutionally inadequate treatment of chronic pain in its patients.

(Pl. Br. at 7.)

## II.   Threshold Issue: Standing for Liability Class

Some of the SRDs' arguments regarding predominance raise a challenge to Plaintiffs' standing as part of the liability class. The SRDs point out that "most Defendants were not personally involved in the treatment of most of the Plaintiffs named." (SRD Opp. at 21.) That fact implicates a "general rule" of standing: "a plaintiff cannot bring a class action against parties that did not injure her." Mahon v. Ticor Title Ins. Co., 683 F. 3d 59, 61 (2d Cir. 2015) (citing La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 466 (9th Cir.1973)); accord Thompson v. Board of Educ. of Romeo Community Schools, 709 F.2d 1200, 1204 (6th Cir. 1983) (recognizing the "principle that each member of a plaintiff class must have a cause of action against each defendant"). In this case, because none of the Plaintiffs named or absent is alleged to have been injured by all the SRDs and NSRDs, Plaintiffs have failed to allege sufficient facts to

3

show the liability class has standing to bring its suit under Article III.

Plaintiffs reject this conclusion, relying on Payton v. County of Kane, a Seventh Circuit case that espoused the "juridical link doctrine." 308 F. 3d 673 (7th Cir. 2002), cert. denied, 540 U.S. 812, 124 S. Ct. 61, 157 Ed. 2d 26 (2003). The juridical link doctrine holds that if the plaintiffs "as a group – named and unnamed – have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise 'juridically related in a manner that suggests a single resolution of the dispute would be expeditious,' the claim could go forward." Id. at 679 (quoting La Mar, 489 F.2d. at 466). Plaintiffs assert that "[n]o Second Circuit court has suggested the juridical link doctrine cannot apply under these circumstances." (Pl. Reply at 20.)

Plaintiffs cite Mahon, yet Mahon holds that Article III only permits plaintiffs to sue defendants who injured them; plaintiffs may not sue defendants who did not injure them, even if those defendants engaged in similarly injurious conduct against others. 683 F.3d at 62-63, 66. There, Plaintiff sued Chicago Title Insurance Company ("Chicago Title"), Ticor Title Insurance Company ("Ticor"), and Ticor Title Insurance Company of Florida ("Ticor Florida"), all wholly owned subsidiaries of

4

Fidelity National Financial. Id. at 60. The three companies provided title insurance to Connecticut residents, which "protects against the risk of a title challenge." Id. Connecticut law required title insurers to file premium rate schedules and charge premiums in accordance with the schedules, and the three companies coordinated their rate schedules, including a reduced rate for refinance transactions. Id. The three companies "routinely concealed the reduced rate for refinance transactions from their customers," including Plaintiff Deborah Mahon, who purchased title insurance from Chicago Title when refinancing an existing mortgage. Id. Chicago Title "did not disclose to Mahon her eligibility for the discounted refinance rate and charged her the full rate." Id.

Mahon then brought a putative class action suit against all three companies on behalf of all those who paid for their title insurance at the full rate but qualified for the reduced rate. Id. at 61. Mahon alleged that Chicago Title was the only company to injure her personally. Id. However, she argued that she could properly represent a class suing the Ticor entities because they were juridically linked to Chicago Title as wholly owned subsidiaries of the same parent company which coordinated with Chicago Title and used the same challenged practices against their own customers. Id.

The Court of Appeals held that "whether or not Rule 23 would permit a plaintiff to represent a class against non-injurious defendants cannot affect the plaintiff's Article III standing to sue the non-injurious defendants." Id. at 64. The Court of Appeals also expressly rejected the logic of Payton. Noting the Seventh Circuit's interpretation of Ortiz v. Fibreboard Corp., 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), as a "directive to consider issues of class certification prior to issues of standing," Payton, 308 F.3d at 680, the Court of Appeals wrote that the Supreme Court's "logical antecedence" language in Ortiz was "relevant when resolution of class certification obviates the need to decide issues of Article III standing. We do not read it, as the Payton court did, as instructing courts to always treat class certification first and to treat the class as the relevant entity for Article III purposes." Mahon, 683 F.3d at 65.

Finally, the Court of Appeals rejected Mahon's interpretation of Article III that "as long as the injurious defendant is sued in the same case, Article III does not prevent a plaintiff from suing non-injurious defendants" in juridical link cases. Id. Explaining its reasoning, the Court of Appeals wrote that Mahon "fail[ed] to explain why a plaintiff's injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants,

6

even if they engaged in similar conduct that injured other parties." Id.

Plaintiffs "invoke" Payton's holding in their attempt to discount the SRDs' arguments. (Pl. Reply at 19.) However, as discussed, the Court of Appeals expressly rejected the Seventh Circuit's interpretation of Supreme Court precedent that underpinned the Payton decision. Thus, the Court declines to adopt Payton's reasoning and finds that Plaintiffs have failed to allege sufficient facts to show that the liability class has standing to sue the SRDs and the NSRDs. Plaintiffs' motion to certify the liability class is DENIED.

### III. Legal Standards
#### A. Fed. R. Civ. P. 23

Rule 23 reads in relevant part:

(a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

   (1) the class is so numerous that joinder of all members is impracticable;

   (2) there are questions of law or fact common to the class;

   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

   (4) the representative parties will fairly and adequately protect the interests of the class.

(b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if . . .

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## B. Rule 23 Case Law

### i. Rule 23 Generally

"The party seeking class certification bears the burden of satisfying Rule 23's prerequisites by a preponderance of the evidence." Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 317 F.R.D. 374, 384 (S.D.N.Y. 2016) (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)).

> While a plaintiff's pleadings are taken as true for the purposes of examining a class certification motion, Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n. 15 (2d Cir.1978), a district court must nevertheless apply a "rigorous analysis" to the question of whether a class "comports with all the elements of Rule 23." See Fogarazzao v. Lehman Bros., Inc., 232 F.R.D. 176, 179 (S.D.N.Y.2005) (citing General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982)).

Rapcinsky v. Skinnygirl Cocktails, L.L.C., 2013 WL 93636, at *3 (S.D.N.Y. Jan. 9, 2013). "In evaluating a motion for class certification, the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement." Brown v.

Kelly, 609 F.3d 467, 476 (2d Cir. 2010) (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir.2006)).

### a. Rule 23(a) Prerequisites

Plaintiffs seeking to certify a class must satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The Second Circuit has also "'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" Univs. Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. (In re Petrobras Sec.), 862 F.3d 250, 260 (2d Cir. 2017) (quoting Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015)). "In addition to satisfying the Rule 23(a) prerequisites, the plaintiff must qualify the proposed class under at least one of three subsection Rule 23(b) categories." Fed. R. Civ. P. 23(b); Goldemberg, 317 F.R.D. at 385 (citing Brown, 609 F.3d at 476). Plaintiffs move to certify their Injunctive Class under Rule 23(b)(2). (Pl. Br. at 7.)

### b. Rule 23(b)(2): Single Injunction

Class certification under Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class." Wal-Mart Stores, Inc. v. Dukes,

9

564 U.S. 338, 360 (2011). "The key to the (b)(2) class is . . . the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Id. (citation omitted). Rule 23(b)(2) does not authorize class certification when "each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Id. "'Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." Id. at 361 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997)).

IV. **Discussion**

   A. **Rule 23(a) Prerequisites**

      i. **Numerosity**

Plaintiffs say their review of Defendants' directory of MWAP Request Forms revealed that over one thousand patients lost their effective MWAP medication during the class period. (Pl. Reply at 4.) Further, Plaintiffs have gathered medical records of "at least 180 putative class members who lost their effective medications under MWAP." (Pl. Br. at 10-11.)

Dr. Moores' arguments against numerosity[5] sound in the same mootness bases that the Court recently rejected in its opinion denying Defendants' Rule 12(b)(1) motion to dismiss and granting Plaintiffs' motion for a preliminary injunction. (See dkt. no. 552.) The Court again rejects these arguments here.[6] Even if it is not currently clear exactly how large the class is, Plaintiffs have shown by a preponderance of the evidence that the class is of sufficient size that the joinder of all class members would be impracticable. Thus, the Court finds Plaintiffs have met the numerosity requirement.

    **ii.** **Commonality**

Plaintiffs propose two common questions that ask whether Defendants' discontinuing or denying MWAP medications without

---

[5] Dr. Moores asserts that Plaintiffs' injunctive class does not meet the Rule 23(a) numerosity requirement because, due to the new Policy 1.24A, "all individuals treated for chronic pain who are currently or will be incarcerated by DOCCS will, by express policy, be receiving individualized assessments, leaving no individuals to make up a class of individuals needing injunctive relief." (Moores Opp. at 5-6.) Plaintiffs reject Dr. Moores' assertion that every chronic pain patient will receive an assessment and be effectively treated because, when Dr. Moores reviewed a subset of patient medical records, she had to add Code 338 (indicating a pain patient) to fifteen of the records and had to follow up on the care of seventeen patients. (Pl. Reply at 4-5.) Plaintiffs contend that if what Dr. Moores wrote about mootness was true, then Dr. Moores would not have had to intervene regarding any patient's care. (Id.)

[6] The Court similarly rejects Dr. Moores' arguments regarding past conduct (Moores Opp. at 9), Plaintiffs' failure to challenge Policy 1.24A (id. at 12-13), imminent injury (id. at 14), and the Galvan ruling (id. at 15-16).

11

individualized assessments and failing to offer effective alternative treatment meets the standard of deliberate indifference under the Eighth Amendment. (Pl. Br. at 12.) Dr. Moores's arguments against commonality boil down to an assertion that Plaintiffs' common questions would require "'a highly individualistic determination,' i.e., whether each class member was denied necessary treatment without medical justification." (Moores Opp. at 9.) However, the Court notes the string of cases Plaintiffs cited from this Circuit certifying classes based on common questions of correctional facilities' deliberate indifference (Pl. Br. at 12), see, e.g., McGee v. Pallito, 2015 WL 5177770, at *4 (D. Vt. Sept. 4, 2015) ("[w]hether the prisons' constant illumination policy violates the Eighth Amendment rights of prisoners is an appropriate question for class treatment"), and thus finds that Plaintiffs have met their showing of commonality.

### iii. Typicality

Despite Dr. Moores' assertions to the contrary,[7] Plaintiffs represent that at least some of the named Plaintiffs still require appropriate reassessments and treatment and thus have

---

[7] Dr. Moores writes that Plaintiffs fail the typicality requirement because "the named Plaintiffs are receiving proper assessments and treatment and thus their claims are not typical of the proposed class." (Moores Opp. at 9.)

12

claims typical of the injunctive class. (Pl. Br. at 14-15; Pl. Reply at 7-8.) Based on the evidence adduced at the February 2023 evidentiary hearing (see dkt. nos. 537, 539, 541), the Court agrees with Plaintiffs for the same reasons it found ongoing constitutional violations within DOCCS' medical system in its opinion granting a preliminary injunction (see dkt. no. 552). Thus, Plaintiffs have shown typicality by a preponderance of the evidence.

    iv.   **Adequacy**

Fourth, Dr. Moores argues that Plaintiffs fail the adequacy requirement because Plaintiffs have filed a motion to intervene that states it is "painfully obvious that there are patients affected by the implementation of MWAP who may not be adequately represented by the current Plaintiffs." (Moores Opp. at 12 (quoting dkt. no. 345 at 1).) Plaintiffs respond that Dr. Moores "makes no cogent argument that Plaintiffs have not met the adequacy prong." (Pl. Reply at 8.) The Court finds that Plaintiffs' interests are not "antagonistic" to the interest of other class members and Plaintiffs' attorneys are "qualified, experienced, and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000). Thus, Plaintiffs have met their burden of showing adequacy.

v. **Ascertainability**

Dr. Moores asserts that the criteria Plaintiffs used to define their injunctive class, specifically the issues of whether a putative class member is receiving effective treatment or received or requires an individualized assessment, are "subjective, individualized, and largely undefined." (Moores Opp. at 13.) Plaintiffs reply that their class is "easily ascertainable as defined as patients who suffer from chronic pain and/or neuropathies. Members of the class can easily be identified with the very coding [indicating chronic pain] applied to patients at reception . . . as well as through the Project Bob database[8] and reception facility prescription records as necessary." (Pl. Reply at 8-9.)

The Court agrees with Plaintiffs. Whether a prospective class member suffers from "chronic pain and/or neuropathies" and requires "individualized assessments of medical need for treatment with MWAP medications" should be ascertainable based

---

[8] Plaintiffs write that the Project Bob database is a compilation of the data produced by Defendants from their directory of MWAP Request Forms. (Agnew Decl. ¶ 16.) The Project Bob database is not a "complete rendering" of all patients affected by the MWAP Policy because "[m]any MWAP Request forms are not included and many patients' medications were discontinued before June 1, 2017 when MWAP was promulgated and DOCCS started using the MWAP Request forms." (Id. ¶ 17.) See also, Declaration of Sterling Avellino in Support of Plaintiff's Fed. R. Evid. 1006 Exhibits, dated May 16, 2022 (dkt. no. 368) (a declaration by a part-time IT worker in Plaintiffs' counsel's office detailing the steps taken to create the Project Bob database).

on the prospective class member's medical records. The Court finds that Plaintiffs' proposed injunctive class is "defined using objective criteria that establish a membership with definite boundaries." In re Petrobras Securities, 862 F.3d at 264. Thus, Plaintiffs' have made the ascertainability showing.

### B. Rule 23(b)(2): Single Injunction

Plaintiffs propose to certify their injunctive class pursuant to Rule 23(b)(2), which holds that a class action may be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Dr. Moores argues that if the implementation of Policy 1.24A has only helped a "small subset" of putative class members, then the Court cannot certify the injunctive class because a subset of class members would not benefit from a single injunction, as is required under Rule 23(b)(2). (Moores Opp. at 14-15, 17.) Dr. Moores relies on Berni v. Barilla S.p.A., in which the Court of Appeals denied certification of a class of past purchasers of Barilla pasta for the purposes of injunctive relief. 964 F.3d 141, 149 (2d Cir. 2020). Dr. Moores quotes Wal-Mart Stores: "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the

class." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011).

However, the logic of the Berni decision depends on the fact that plaintiffs there attempted to certify an injunctive class based on a complaint that only alleged past harms. Berni, 964 F.3d at 147. By contrast, in this case, the Court has held that Plaintiffs have shown ongoing constitutional violations, some of which include medically unjustified discontinuations of MWAP treatment, for example, upon transfer to a different facility. (See dkt. no. 552.) Thus, even for those putative class members who are currently receiving proper treatment after the implementation of Policy 1.24A, Plaintiffs have demonstrated a likelihood of imminent future harm across all putative class members, making it possible for a single injunction to provide relief to each member of the class. The Court rejects the Berni analogy; this case is much more akin to a "[c]ivil rights case[] against parties charged with unlawful, class-based discrimination," which the Supreme Court has characterized as the "prime example[]" of what Rule 23(b)(2) is meant to capture. Wal-Mart, 564 U.S. at 361 (quoting Amchem, 521 U.S. at 614). Thus, the Court finds that Plaintiffs have made their Rule 23(b) showing by a preponderance of the evidence. Plaintiffs' motion to certify the injunctive class is GRANTED.

## V. Conclusion

For the foregoing reasons, Plaintiffs' motion to certify an injunctive class pursuant to Rule 23(b)(2) is GRANTED and Plaintiffs' motion to certify a liability class pursuant to Rule 23(b)(1)-(3) and 23(c)(4) is DENIED. The Court adopts Plaintiffs' definition of the injunctive class. (See supra at 2.) The Court finds Plaintiffs' counsel are qualified, experienced, and otherwise appropriate class counsel.

Plaintiffs' counsel shall write to the Court to identify appropriate representatives for the injunctive class.

The Clerk of the Court shall close the open motion. (Dkt. no. 346.)

**SO ORDERED.**

Dated:   March 31, 2023
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge