UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
PETER ALLEN, et al.,

                    Plaintiffs,

 -against-

 CARL KOENIGSMANN, et al.,

                    Defendants.
```

No. 19-CV-8173 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

This matter is before the Court on Plaintiffs' motion for a preliminary injunction.  For the reasons summarized below and those outlined in the Court's opinion granting Plaintiffs' motion, (dkt. no. 552), the Court issues the following Order.

## I.  **Background**

Plaintiff prisoners in the New York State Department of Corrections and Community Supervision ("DOCCS") system filed this action in September of 2019 alleging violations of their rights to be free of cruel and inhuman treatment pursuant to the protections of the Eighth Amendment.  Specifically, Plaintiffs alleged that DOCCS medical staff denied and/or discontinued medications with abuse potential ("MWAP") pursuant to policies, practices, and customs, without individualized assessments of patients' needs or the efficacy of treatment.  These policies,

practices, and customs included but were not limited to the MWAP Policy[1] promulgated in June of 2017.

In December of 2020, Plaintiffs moved for leave to file a Second Amended and Supplemental Complaint ("SAC") seeking, in part, prospective relief to remedy the alleged policies, customs, and practices of denying or discontinuing medications without medical justification. (Dkt. no. 189.)  Leave was granted (dkt. no. 250), and the SAC was filed on June 25, 2021. (Dkt. no. 256.)  On February 8, 2021, Defendants rescinded the MWAP Policy and replaced it with Health Services Policy 1.24A, "Prescribing for Chronic Pain."

In May of 2022, Plaintiffs moved for certification of injunctive and liability classes and class-wide preliminary injunctions. (Dkt. no. 346).  In opposition, Defendants argued, inter alia, that the motion was moot because the MWAP Policy had been rescinded and replaced by Policy 1.24A (which did not require approval of a RMD before a PCP could prescribe an MWAP). (Dkt no. 450 at 5-6.)  After the motions were fully briefed, the Court held an evidentiary hearing on February 6-8, 2023, regarding Defendant Moores' voluntary cessation defense.  As set out in the Opinion and Order granting the preliminary injunction

---

[1] Policy 1.24 ("the MWAP Policy") required, inter alia, the approval of a Regional Medical Director ("RMD") before a primary care provider ("PCP") could prescribe an MWAP for a patient.

motion (dkt. no. 552), several DOCCS inmates testified to what
the Court found to be ongoing constitutional violations with
respect to treatment of chronic pain patients.  The parties also
filed post-hearing briefs. (Dkt. nos. 536 and 545.)

During the hearing, Dr. Moores' definition of an
individualized assessment for chronic pain treatment was
received into evidence.  She stated that an individualized
assessment must include: i) a review of the patient's entire
medical history; ii) a thorough physical exam; iii) a list of
the patient's diagnoses and source(s) of pain; iv) the patient's
current pain level; v) a note of what past medications have
worked and what medications have not worked with notes related
to side effects; and, vi) a detailed plan going forward on how
DOCCS health providers plan to treat the patient. (Hearing
Exhibit D-3.)[2]

On March 31, 2023, this Court granted Plaintiffs' motion
for certification of a class of prisoners for injunctive
purposes pursuant to Fed. R. Civ. P. 23(b)(2) and denied
certification of a liability class. (Dkt. No. 553.)  The

---

[2] (Memorandum to Deputy Superintendents for Administration and
Health, Facility Health Services Directors, and Nurse
Administrators from Carol A. Moores, MD, MPH, MSHA, Deputy
Commissioner/Chief Medical Officer regarding Health Care for
Chronic Pain Patients, dated October 31, 2022. [Dkt. no. 489-
3.])

certified injunctive class was defined as, "[a]ll incarcerated individuals who are or will be in the care and custody of the New York State Department of Corrections and Community Supervision who suffer or will suffer from chronic pain and/or neuropathies who require individualized assessments of medical need for treatment with MWAP medications." ("Plaintiff Class" or "Plaintiff Class members") (dkt. no. 553 at 17.)  The Court also granted the Plaintiffs' motion for a preliminary injunction and, pursuant to the cautions embodied in Dean v. Coughlin, 804 F.2d 207, 213 (2d Cir. 1986), directed the parties to confer and submit a proposal for the provisions of the preliminary injunction. (Dkt. no. 552 at 66.)  On May 4, 2023, Defendant Moores filed a proposed form of order that was unacceptable to the Court. (Dkt. no. 575.)  After an in-person conference and a meet and confer, Defendants submitted a second proposed form of order on May 16, 2023. (Dkt. no. 579-1.)  In response, Plaintiffs sought leave to file an alternative proposed form of order on May 25, 2023. (Dkt. no. 579.)  The Court granted Plaintiffs' request. (Dkt. no. 580.)

Having considered the papers, arguments, and briefs filed by the parties and the evidence presented at the hearing, the Court found that the evidence supported the granting of a class-wide preliminary injunction. (Dkt. no. 552.)  Specifically, the Court found that Plaintiff Class members were likely to prevail

on the merits of their claims that DOCCS medical providers are
deliberately indifferent to the Plaintiff Class members' serious
medical need of treatment for chronic pain and neuropathies.  In
granting the injunction, the Court found that the potential for
harm to Plaintiff Class members outweighed the potential harm to
Defendant Moores, that the harm to the Plaintiff Class if the
Court failed to grant an injunction is irreparable, and that it
is in the public interest to grant the injunction.  Before
setting out the terms of the injunction, the Court will discuss
the requirements of the Prison Litigation Reform Act ("PLRA").
18 U.S.C. § 3626.

## II.  **Legal Standard**

The PLRA requires that any preliminary injunctive relief
concerning prison conditions "be narrowly drawn, extend
no further than necessary to correct the harm the court
finds requires preliminary relief, and be the least
intrusive means necessary to correct that harm." In
weighing a request for preliminary injunctive relief,
"[t]he court shall give substantial weight to any
adverse impact on public safety or the operation of a
criminal justice system caused by the preliminary
relief."

Green Haven Prison Preparative Meeting of Religious Soc'y of
Friends v. New York State Dep't of Corr. & Cmty. Supervision, 16
F.4th 67, 78 (2d Cir. 2021) (quoting 18 U.S.C. § 3626(a)(2)).
"Narrow tailoring requires a 'fit' between the [remedy's] ends
and the means chosen to accomplish those ends. The scope of the
remedy must be proportional to the scope of the violation, and

the order must extend no further than necessary to remedy the violation." Brown v. Plata, 563 U.S. 493, 531 (2011) (citation and quotation marks omitted).  Courts may not impose remedial orders that "unnecessarily reach out to improve prison conditions other than those that violate the Constitution." (Id.) (citation omitted).

> [I]n the prison context, "'a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of [ ] prisons.'" V.W. v. Conway, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017) (quoting Fisher v. Goord, 981 F. Supp. 140, 167 (W.D.N.Y. 1997)). . . . However, "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." Brown v. Plata, 563 U.S. 493, 511 (2011).

Barrett v. Maciol, 20-CV-537 (MAD/DJS), 2022 WL 130878, at *4 (N.D.N.Y. Jan. 14, 2022).

### III. **Discussion**

Based on the evidence in the record and the findings made by the Court in its preliminary injunction opinion, (dkt. no. 552), the Court finds that Defendants continue to deny or discontinue chronic pain and neuropathy medications to patients throughout the DOCCS system without medical justification.  To remedy these violations of Plaintiff Class members' rights, the Court orders the following relief, which is directly aligned with the implementation and enforcement of DOCCS' own Policy 1.24A.  The Court finds this relief is narrowly drawn, extends

6

no further than necessary to correct the violation of the
constitutional rights at issue, and is the least intrusive means
necessary to correct the violations of the Plaintiff Class
members' federal rights.  The Court finds that the scope of this
relief is proportional to the scope of Defendants' violations.
In fashioning the following terms, the Court has given
appropriate weight to the potential adverse impact on public
safety or the operation of the criminal justice system that may
result from the preliminary injunction.

**IT IS HEREBY ORDERED** that Defendant Moores shall provide a
copy of this Order to all DOCCS medical personnel, including
administrators, PCPs, and nursing staff, within ten days of
entry of this Order.

**IT IS FURTHER ORDERED** that Defendant Moores and any
succeeding Chief Medical Officer who serves in that official
capacity, and each of her/his officers, agents, servants,
employees, and attorneys, as well as any other person acting in
concert with them or on their behalf who receives actual notice
of this Order shall:

1.   Order that all DOCCS Facility Health Services
Directors ("FHSD"), PCPs, and relevant medical staff comply with
the provisions of DOCCS Health Services Policy 1.24A, entitled,

"Prescribing for Chronic Pain."  Complying with Policy 1.24A
shall include the following actions:

a) Each DOCCS patient with a chronic pain condition shall
be given the Problem List Code 338 "Pain Management."

b) A PCP may prescribe any medication(s) deemed appropriate
for treatment of the patient's chronic pain condition.  There is
no requirement for an approval process except when a non-
formulary medication is requested.  Non-formulary medications
shall be approved in cases where it is documented that other
formulary treatments were tried and shown to:

1) be unsuccessful in achieving functional treatment
   goals; or
2) cause unacceptable side effects.

c) Specialty consultations will be ordered as indicated for
the evaluation and care of chronic pain patients.

d)   In the event the PCP does not accept the
recommendations of the specialist, the PCP shall:

- Document in the patient's Ambulatory Health Record
  ("AHR") the reasons why the PCP does not accept the
  recommendations;
- Call the specialist to discuss the case to clarify
  that the specialist understands the pertinent details
  of the patient's situation;

8

- If the PCP still does not accept the specialist's
  final recommendations, the PCP shall discuss the case
  with another DOCCS provider, FHSD, or the RMD;

- Documentation of these discussions shall be recorded
  in the patient's AHR; and

- All treatment decisions will be made by the PCP.

e)   Pain management medication shall only be discontinued
after a provider has met with the patient, discussed the issues
regarding the use of the medication, analyzed the patient's
situation, and subsequently determined that it is in the best
interest of the patient for the medication to be discontinued.
The discussion with the patient and the reasons for the
discontinuation of the pain medication shall be recorded in the
patient's AHR.

f)   Patients with the Pain Management designation Code 338
shall be seen at least every 90 days by a PCP.  At least
annually, the PCP shall meet with the patient to discuss the
patient's treatment plan.

2.   Within 45 days of the entry of this Order, Defendant
Moores or her officers, agents, servants, or employees shall
train all relevant DOCCS medical personnel on the above
provisions and how they should be implemented.

3.   Within 60 days of the entry of this Order, Defendant
Moores or her officers, agents, servants, or employees shall

9

develop and implement a program for identifying new medical providers hired or rehired by DOCCS and ensure that each is trained on the provisions of DOCCS Health Services Policy 1.24A within 60 days of his/her hire date.

4.  Within 60 days of the entry of this Order, Defendant Moores or her officers, agents, servants, or employees shall identify all patients in custody at one of DOCCS facilities who suffer from a chronic pain condition and add Code 338 to his/her Medical Problem List, including those still in DOCCS custody who suffer from a chronic pain condition and were denied or discontinued from MWAP medications pursuant to the former MWAP Policy.

5.  Within 60 days of the entry of this Order, Defendant Moores or her officers, agents, servants, or employees shall develop and implement a system for identifying all patients who transfer into the custody of DOCCS and suffer from chronic pain conditions and ensure that Code 338 is included in his/her Medical Problem List.

6.  Within six months after Code 338 is added to patient's Medical Problem List, Defendant Moores or her officers, agents, servants, or employees shall ensure the completion of an individualized assessment of that patient's chronic pain management needs by a PCP if one has not been conducted in the sixty days prior to the addition of Code 338.  Such

individualized assessment shall conform to Defendant Moores'
description of an individualized assessment:

- a review of the patient's medical chart or history;

- a thorough physical examination;

- the creation of a list of the patient's diagnoses and
  source(s) of pain;

- the patient's current pain level;

- notations of what past medications have worked to
  treat the patient's chronic pain, what medications
  have not worked, and any side effects from medications
  trialed;

- creation of a detailed plan of care for treatment of
  the patient's chronic pain;

- a discussion with the patient about appropriate
  treatment options; and

- documentation of the individualized assessment
  pursuant to current DOCCS Health Services Policies.

7.   Within sixth months of the date of this Order,
Defendant Moores or her officers, agents, servants, or employees
shall ensure the completion of an individualized assessment by a
PCP of the chronic pain management needs for all patients who
have Code 338 on their medical Problem List as of the date of
this Order if one has not been conducted in the sixty days

prior.  Such individualized assessment shall include the
following:

- a review of the patient's medical chart or history;

- a thorough physical examination;

- the creation of a list of the patient's diagnoses and
  source(s) of pain;

- the patient's current pain level;

- notations of what past medications have worked to
  treat the patient's chronic pain, what medications
  have not worked, and any side effects from medications
  trialed;

- creation of a detailed plan of care for treatment of
  the patient's chronic pain;

- a discussion with the patient about appropriate
  treatment options; and

- documentation of the individualized assessment
  pursuant to current DOCCS Health Services Policies.

8.   To ensure progress is made on the individualized
reassessments mentioned in paragraphs 6 and 7 above, Defendant
Moores or her officers, agents, servants or employees shall
produce to Plaintiffs, every thirty days from the date of entry
of this Order, documentary proof of the individualized
assessments of chronic pain patients which includes the identity
of the patient, the date of the reassessment, the facility in

which the reassessment took place, the identity of the provider who conducted the reassessment, and all results of the reassessment.

**IT IS FURTHER ORDERED** that Defendant Moores, her successor and/or her counsel shall notify the Court and all parties if any change to Health Services Policy 1.24A is made by DOCCS;

**IT IS FURTHER ORDERED** that the failure to comply with this Order shall not be excused by allegations of inadequate staffing;

**IT IS FURTHER ORDERED**, given the PLRA's provision for automatic expiration of preliminary injunctive relief 90 days after its entry, (18 U.S.C. § 3626(a)(2)), before the expiration of the preliminary injunction, the parties shall either:

1.   Stipulate that the preliminary injunction shall remain in effect for an additional 90 days; or

2.   Move forward with the evidentiary hearing, scheduled to begin August 7, 2023, to determine whether the preliminary injunction should be converted into a permanent injunction or whether permanent injunctive relief should be denied.


**SO ORDERED.**

Dated:       June 12, 2023
             New York, New York

13

_____
LORETTA A. PRESKA
Senior United States District Judge