N896ALLC                        Teleconference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   PETER ALLEN, *on behalf of*
    *themselves and others*
4   *similarly situated, et al.,*
                    Plaintiffs,
5
                    v.                          19 CV 08173(LAP)
6
    CARL KOENIGSMANN, MD, *et al.,*
7                   Defendants.

8   -------------------------------x
                                         New York, N.Y.
9                                        August 9, 2023
                                         1:00 p.m.
10
    Before:
11
                    HON. LORETTA A. PRESKA,
12
                                         District Judge
13
                          APPEARANCES
14
    LAW OFFICE OF AMY JANE AGNEW
15       Attorneys for Class Plaintiffs
    BY:  AMY JANE AGNEW
16       JOSHUA L. MORRISON

17  WHITEMAN OSTERMAN & HANNA
         Attorney for Defendant Moores
18  BY:  ORIANA KILEY
         WILLIAM NOLAN
19       GABRIELLA LEVINE
         JENNIFER THOMAS
20

21

22

23

24

25

1           MS. AGNEW:  Good afternoon.  A.J. Agnew, Josh

2    Morrison, and we also have some law students.

3           THE COURT:  Wonderful.  Good afternoon.  Who is on for

4    the defense side, please.

5           MS. KILEY:  On behalf of Dr. Moores, Oriana Kiley.

6    I'm joined by my colleagues Will Nolan, Jennifer Thomas, and

7    Gabriella Levine.

8           Good afternoon, your Honor.

9           THE COURT:  Good afternoon.

10          Folks, I assume you've seen the Court of Appeals

11   vacating the stay.

12          MS. KILEY:  Yes, your Honor.

13          MS. AGNEW:  We have, your Honor.

14          THE COURT:  What would you like to do now, friends?

15          MS. AGNEW:  This is A.J. Agnew on behalf of the

16   plaintiff class.  Certainly, we'd like to get new trial dates.

17   But I do have two things I want to address before that, if I

18   could, please.

19          THE COURT:  Yes, ma'am.

20          MS. AGNEW:  So, as the Court is aware, last week,

21   Defendant Moores took the deposition of approximately

22   20 prisoners and injunctive class members.  It quickly became

23   apparent during those depositions that the state has endeavored

24   to treat these patients, which we are of course thrilled about,

25   but some of them, in fact, were given their medications back

1    the day before the deposition.

2            We also note for the record that even though there was

3    a prohibition against using the medical records of these

4    patients that had not been produced by July 15,

5    Defendant Moore's counsel was incredibly aware of the details

6    of their recent treatment, including the fact that they had

7    been prescribed drugs just the day before when we hadn't even

8    had a chance to talk to our plaintiffs and find that out.  They

9    knew things like, isn't it true you got a back brace last week?

10           So, certainly, they are allowed to prepare their case

11   by calling their providers, but we're concerned about the

12   spirit of the order, which is that if we didn't have access to

13   medical records, they shouldn't have access to medical

14   information.

15           But in light of these changes, it seems they have

16   endeavored to moot out — although that's not how the case law

17   works — our witnesses who we have ready to testify.  And in

18   light of that, we seek permission from the Court to name 12 new

19   witnesses, to swap them out for 12 of the ones that they have

20   treated at the 11th hour before what they propose was going to

21   be the trial date.

22           We also note for the record that Mr. Morrison went

23   this morning to Fishkill Correctional Facility because about a

24   week ago, Mr. Daniels was attacked while he was in the

25   medication line under the suggestion that he was trying to get

N896ALLC                    Teleconference

1   a second dose of his Lyrica.  That's not what happened.  But he

2   was maced by the officers.  He was then given two tickets and

3   thrown in the SHU at Fishkill.  When he arrived at Fishkill, he

4   was told we don't give Lyrica here.  Mr. Morrison just left his

5   side and had a face-to-face meeting with him.  We wanted to

6   make sure he was physically okay.  He does seem to be okay

7   other than some bumps and bruises, but he is not getting his

8   medication.

9            We're upset about this because Mr. Daniels is a quiet,

10   unassuming guy.  He really worked with counsel, put together

11   this case since its inception, and he's not a rabble-rouser.  I

12   don't know why this happened to him.  I'm very unhappy about

13   it.  But we have to impress upon Defendant Moore's counsel that

14   he needs his Lyrica, and he needs it now.

15            THE COURT:  Ms. Kiley.

16            MS. KILEY:  Your Honor, when we went into our

17   depositions last week, we had done our due diligence in

18   preparation for trial, and we did indeed speak to the provider

19   up until the middle of that week.  We thought the trial was

20   going to proceed.  Like I said, we did what we could to contact

21   as many providers to prepare for trial.  To the extent counsel

22   believes we obtained other medical records, that's not true.

23   Any information we received in preparation for the deposition

24   was essentially our preparation for trial.

25            THE COURT:  I don't quite get that.  I don't get that

1    part.  Please say that again.  Are you saying to me that you

2    didn't review any medical records, but you talked with the

3    providers about medical events that took place after July 15?

4    Is that what you're telling me?

5              MS. KILEY:  Yes.

6              THE COURT:  So do you think that was a way to avoid

7    the ruling that the Court made with respect to medical records

8    after July 15?

9              MS. KILEY:  No, your Honor.  My understanding was that

10   the order to produce those documents was still going to happen,

11   except that the documents itself could not be used as evidence

12   in trial in order to prepare --

13             THE COURT:  You were permitted to interview the

14   providers to get the information that is included in the

15   medical records that may not be entered as evidence at trial;

16   is that what you're telling me?

17             MS. KILEY:  Your Honor, we reached out to the

18   providers to find out what was the --

19             THE COURT:  You're telling me --

20             MS. KILEY:  -- current status of their --

21             THE COURT:  Yes or no?

22             MS. KILEY:  Can you repeat the question?  I'm sorry.

23             THE COURT:  Are you telling me that you interviewed

24   medical providers to elicit from them information that would

25   have been, and probably was included, in post-July 15 medical

N896ALLC                    Teleconference

1  records, which we know, according to the order, may not be used

2  in the trial?  Is that what you're saying, you got the --

3          MS. KILEY:  No, your Honor.

4          THE COURT:  -- information from the providers but not

5  from the records so as not to contravene the order?

6          MS. KILEY:  No, your Honor.  We called them to prepare

7  for trial.

8          THE COURT:  So what is your explanation, then, as to

9  why you will be able to elicit at trial information from

10  medical records that can't be introduced pursuant to the order?

11          MS. KILEY:  Because if we want to call them on

12  rebuttal, we would be asking these providers to testify to

13  their personal knowledge of the care that they give to the

14  patient in question.  If they happen to know the exact date

15  that they gave --

16          THE COURT:  Counsel --

17          MS. KILEY:  -- admitted something --

18          THE COURT:  Counsel, counsel.  You may not contravene

19  the order.  The whole purpose of the order was to permit both

20  sides to have the same medical information in advance of trial.

21          What is your position with respect to the individual

22  suddenly receiving their medication?  Was that the goodness of

23  God?  Did that come out of the heavens?  How did that happen?

24          MS. KILEY:  Your Honor, my office did not facilitate

25  any specific care or direction of care to any of the patients.

N896ALLC                    Teleconference

1    To the extent they received the medications that they have been

2    asking for, that was due to the communication, we presume, that

3    plays between the patient and the provider.  We did not

4    facilitate any of that, as far as my office.  And I -- that's

5    all I can say to that.  If counsel is upset that -- never mind.

6    I'm sorry.  Withdrawn.

7          THE COURT:  What is your position with respect to

8    Mr. Daniels?

9          MS. KILEY:  Your Honor, I would -- I don't have a

10   position right now.  I have no knowledge of exactly what took

11   place other than what counsel has just told us about two

12   minutes ago.  And I would hope that the incarcerated individual

13   would communicate with his providers what he needs.

14         THE COURT:  Ms. Agnew.

15         MS. AGNEW:  Your Honor, first of all, my clients'

16   miraculously getting called down for a visit with their

17   provider a day before deposition, a week before trial, and

18   miraculously getting -- for instance, in the case of

19   Joyce Powell, Neurontin she's been asking for six years is

20   hardly coincidental.  I'm not suggesting Ms. Kiley said, give

21   her the Neurontin today, but I'm suggesting that this is

22   improper.

23         It doesn't work to moot our injunctions legally if

24   they look at the case law.  I'm not sure whose idea it was.

25   But it puts us in an untenable position of putting 24 people on

N896ALLC                          Teleconference

1    the stand who have now been treated in the two weeks before

2    trial, and defense counsel knows the details of that treatment,

3    and we have nothing.

4              I mean, we don't even have the medical record which

5    shows why Ms. Powell would have had a medical encounter with

6    her provider that wasn't previously scheduled or requested.

7              They are kind of sinking their own battleship.  But at

8    the same time, I think we should be, one, provided the medical

9    records provided last Friday for all of these people; and two,

10   we should be able to call 12 patients with whom they have not

11   tampered.  I'm not saying that it is Ms. Kiley doing it

12   directly, but with whom central office has not tampered in a

13   week before trial.

14             THE COURT:  All right.  We'll get back to that after

15   we discuss trial dates.

16             What do you want to do, friends?

17             MS. AGNEW:  Obviously, your Honor, plaintiff wants to

18   get in there as quickly as possible.  We do note it takes a lot

19   of effort to line up these prisoners to testify, on the

20   facility level.  So I think anything before two weeks out would

21   be kind of insane for us to complete.

22             THE COURT:  Ms. Kiley, what is your position?

23             MS. KILEY:  We would agree with that.  And we would

24   propose after Labor Day.

25             THE COURT:  What are you going to do about the

N896ALLC                        Teleconference

1   expiration of the preliminary injunction?

2          MS. KILEY:  My understanding is that the preliminary

3   injunction expires on the 10th of September.  The trial could

4   proceed on the 5th, the day after Labor Day.

5          MS. AGNEW:  Your Honor, if I may.  This is A.J. Agnew.

6   I do think there are some polling issues because the

7   preliminary injunction was stayed, which defense counsel didn't

8   take into consideration when they asked for an extension of

9   time on their appeal papers.

10          THE COURT:  Remind me how many days it was stayed,

11   please.  Was it 30?  I'm sorry.  I have it in front of me.

12          July 31, and today is the 9th.  So what is that?  Nine

13   or ten days, something like that?  So that's --

14          MS. AGNEW:  I would say nine days, your Honor.  So

15   we're looking at September 19 now.

16          THE COURT:  All right, then.  Why don't you -- I think

17   we're probably going to have to do it, then, on the 5th.

18          How long do you expect it to take, my friends?

19          MS. AGNEW:  Your Honor, as we had originally

20   indicated, we thought we'd need three days.  However,

21   Defendant Moores does want us to bring all these RMDs instead

22   of using their transcripts, and that's her prerogative.  So

23   we're thinking four days for our case in chief.

24          THE COURT:  Ms. Kiley.

25          MS. KILEY:  Your Honor, depending on how many

N896ALLC                          Teleconference

1   witnesses are actually called, it will dictate how many

2   rebuttal witnesses we may call.  I would guess we would need

3   about two days at most.

4              THE COURT:  All right.  We will give you from the 5th

5   through and including the 12th.

6              MS. AGNEW:  Your Honor, I apologize.  This is

7   A.J. Agnew.  My call dropped, but I'm back on.

8              THE COURT:  Say it again.  I'm sorry.

9              MS. AGNEW:  My call dropped, but I'm back on.  I'm so

10  sorry.

11             THE COURT:  Okay.  I'm saying the best I can do for

12  you, and I will say it is a great personal sacrifice, is to

13  give you the days of the 5th through and including the 12th.

14  You can't have anything more than that.  We have a criminal

15  trial starting the next day.

16             You might want to reconsider bringing in all those

17  RMDs.  You want to do that, that's fine.

18             MS. AGNEW:  Your Honor, we'll take it, and we'll make

19  it work.

20             THE COURT:  If you want to start on the 31st, you can

21  also do that.  It's an extra day for you.

22             MS. AGNEW:  Let's do this.  Let's start on the 5th,

23  your Honor, and we'll cut out some of the cross.  We have to

24  fly our expert in, and he's been really gracious, but asking

25  him to come in the day before Labor Day, that will get me in

N896ALLC                      Teleconference

1    hot water.

2              THE COURT:  Six trial days, figure five hours a day,

3    each of you have half of it.  And you can save some for

4    rebuttal, if you want.  But just tell me how you want to break

5    it up.  All right?  We will be timing you, and you have to use

6    your time wisely.

7              Okay.  That having been said, what are you going to do

8    about producing those medical records ASAP, Ms. Kiley?

9              MS. KILEY:  Your Honor, I was -- my understanding was

10   that the -- I believe it was plaintiff's 14th demand for

11   documents.  Ms. Pam Knight was kind enough to facilitate

12   production of what she could.  My understanding is that there's

13   still an obligation to produce all of those records, and that

14   we're still working with facilities to produce those records.

15   But the July 15 cutoff date was solely to what could be used at

16   trial.

17             THE COURT:  But here's the deal.  We will not have any

18   testimony about any medical situations that happened after,

19   during a trial when plaintiffs don't have the medical records.

20   So if you're trying to argue that the case is moot because,

21   miraculously, these people get their medication, first of all,

22   you better read the cases; and second of all, that's not going

23   to be permitted if plaintiffs do not have the medical records.

24   So you better do what you have to do about it.

25             MS. KILEY:  Yes, your Honor.

N896ALLC                       Teleconference

1          THE COURT:  Let me ask you this.  Have you gone back

2     and read those mootness cases?  Because you really should read

3     them.  It isn't that one or two people get their meds.

4          MR. NOLAN:  Your Honor, this is Will Nolan for

5     Defendant Moores.

6          THE COURT:  Yes, sir.

7          MR. NOLAN:  I just want to say at no point have we

8     tried to moot anybody's claim.  And at no point has our office

9     been involved in any attempt to try to moot anything.

10    Certainly, that was not evident to us in the depositions that

11    were taking place.  The information that we had, to the extent

12    we had it, we were asking questions, and we were getting

13    responses.  There was no surprise.  Yes, we talked to some of

14    the providers, not all of them, but essentially we were talking

15    to these providers in realtime before these depositions to find

16    out who these people were.  So any idea we were trying to moot

17    something is sort of ridiculous.

18         THE COURT:  Let me ask you this, Mr. Nolan.  As

19    Ms. Agnew said, nobody is saying your office did anything.  But

20    I suspect that your clients had a list of the proposed

21    witnesses, and I will be shocked when we see the medical

22    records, if there was any special event that happened that

23    precipitated these individuals receiving their medications

24    after, what I am told at least, was several years of requesting

25    them.

N896ALLC                    Teleconference

```
1        So I'm just asking you folks, take it under

2   advisement.  And I'll say again, there will not be any

3   testimony about any medical actions whatsoever for which

4   plaintiffs do not currently or in the next week or two get the

5   medical records.

6        Do we understand each other?

7        MR. NOLAN:  Yes.

8        THE COURT:  Okay.

9        MS. KILEY:  Yes, your Honor.

10        THE COURT:  What else do you want to do, friends?

11        MS. AGNEW:  I think that's fine, your Honor.

12        In light of that ruling -- this is A.J. Agnew.  We

13   don't need the 12 new witnesses.  I think that levels the

14   playing field in a significant way, and we will get to work on

15   our scheduling.  And I do apologize.  We're going to have to

16   bombard you with some more orders to produce.

17        THE COURT:  Okay.  And my recollection is that

18   Dr. Moores' counsel or Dr. Moores' office was helpful in lining

19   up these folks for their video depositions at the time; isn't

20   that right?

21        MS. AGNEW:  I think they did the best they could do,

22   your Honor.

23        THE COURT:  Okay.  So perhaps they could be helpful

24   again in lining up the folks for their video testimony so that

25   it goes smoothly.
```

1          So Ms. Kiley, Mr. Nolan, let me know what orders you

2    need so that you can do this with as little trouble as

3    possible.

4          MS. AGNEW:  This is A.J. Agnew again.  I think my

5    office is much more efficient at this, and that's no dig on

6    Ms. Kiley and Mr. Nolan.  But why don't we just reach out to

7    them if we hit a bump in the road, because generally speaking,

8    my staff are quite good at this.

9          THE COURT:  Okay.  People, let me know what you need.

10         MS. KILEY:  Your Honor, this is Oriana Kiley.  Just a

11   question.  To the extent that any additional medical records

12   are produced between now and September 5, is the Court going to

13   impose a cutoff date as we did the July 15 date?

14         THE COURT:  I will ask for your suggestion on a date.

15   Producing medical records on the morning of September 5 is

16   going to be useless.  Don't you think two weeks out?

17         MS. AGNEW:  Your Honor, I would propose by the 21st.

18   If we don't have records, then those issues or instances are

19   precluded.

20         THE COURT:  Ms. Kiley, is that all right with you?

21         MS. KILEY:  That works for me.  Thank you.

22         THE COURT:  Okay.  Good.

23         What do you want to do about Mr. Daniels?  Ms. Kiley,

24   do you want to make inquiry and get back to plaintiff's

25   counsel, and then if you people need anything, call me later?

N896ALLC                              Teleconference

1              MS. KILEY:  We can do that.

2              THE COURT:  All right.  What else do we need, friends?

3              MS. KILEY:  This is Oriana Kiley.  Sorry.  I just

4     need -- if Ms. Agnew can e-mail me with the patient's name and

5     PIN.

6              THE COURT:  We'll have a short date on Monday the

7     11th, so build that into your timing.  We'll probably end up

8     going four hours in the morning, and that's it.

9              Anything else?

10             MS. AGNEW:  Not from plaintiffs, your Honor.  Thank

11    you.

12             THE COURT:  All right.  Thank you, folks.  Let me know

13    about Mr. Daniels.  Thank you.

14             (Adjourned)

15

16

17

18

19

20

21

22

23

24

25