N91HAllC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  PETER ALLEN, *et al.*,

4              Plaintiffs,

5          v.                          19 Civ. 8173 (LAP)

6  CARL KOENIGSMANN, *et al.*,

7              Defendants.
                                       Telephone Conference
8  ------------------------------x
                                       New York, N.Y.
9                                      September 1, 2023
                                       10:00 a.m.
10
   Before:
11
                     HON. LORETTA A. PRESKA,
12
                                       District Judge
13

14                      APPEARANCES

15 LAW OFFICE OF AMY JANE AGNEW, P.C.
        Attorneys for Plaintiffs
16 BY:  AMY JANE AGNEW
        JOSHUA LEE MORRISON
17
   WHITEMAN OSTERMAN & HANNA L.L.P.
18      Attorneys for Defendant Moores
   BY:  ORIANA L. KILEY
19      WILLIAM S. NOLAN
        CHRISTINA F. VITOLO
20

21 Also Present:

22 Baron Jones and Shira Navatian, Law Students

23

24

25

N91HAllC

1              (The Court and all parties present remotely)

2              THE COURT:  Good morning, counsel.  Judge Preska here.

3              MS. AGNEW:  Good morning, your Honor.  A.J. Agnew.

4              THE COURT:  Ms. Agnew for plaintiff.  Who else?

5              MR. MORRISON:  Mr. Morrison's here as well.

6              MS. AGNEW:  We also have Baron Jones and Shira

7    Navatian, who are law students who will be participating in the

8    trial.

9              THE COURT:  You will ask them to spell their names for

10   the court reporter, right?

11             MS. AGNEW:  I will.  Here we go.

12             MR. JONES:  Good morning.  This is Baron Jones for the

13   plaintiffs.  B-a-r-o-n.  Last name Jones, J-o-n-e-s.

14             THE COURT:  Thank you.

15             MS. NAVATIAN:  Good morning, Shira, S-h-i-r-a,

16   N-a-v-a-t-i-a-n.

17             MS. KILEY:  Oriana Kylie on behalf of Dr. Moores.  I'm

18   joined with Will Nolan, Jennifer Thomas, and Christina Vitolo

19   from my office.  Thank you.

20             THE COURT:  Thank you very much.  Good morning.

21             Have you folks had an opportunity to chat further

22   about the items raised in your letters?

23             MS. AGNEW:  We have not, your Honor.  After we

24   received —— we did receive the letter that Ms. Kiley filed last

25   night with the footnote suggesting this wasn't a marriage

N91HAllC

|  |  |
|---|---|
| 1 | trial, but we have not been able to discuss that with her since |
| 2 | then. |
| 3 | THE COURT:  I'm sorry, who is speaking, please? |
| 4 | MS. AGNEW:  That was A.J. Agnew, madam reporter.  I |
| 5 | will identify myself moving forward. |
| 6 | THE COURT:  Thank you. |
| 7 | Ms. Kiley, did you want to elaborate on your footnote |
| 8 | position on the trial on the merits? |
| 9 | MS. KILEY:  Your Honor, it was solely to reiterate an |
| 10 | argument that was previously made when the Court determined |
| 11 | that it would decide the need for a permanent injunction prior |
| 12 | to a the trial on the merits when the individually named |
| 13 | defendants were still in the case. |
| 14 | THE COURT:  All right.  I'm not sure I understand the |
| 15 | difference between converting the preliminary injunction into a |
| 16 | permanent injunction and a trial on the merits.  What do we |
| 17 | think the difference is? |
| 18 | MS. KILEY:  Your Honor, my understanding from a |
| 19 | reading of virtually all the case law is that typically a trial |
| 20 | on the merits would proceed first and then after that |
| 21 | determination, the Court would determine a need for a permanent |
| 22 | injunction.  Here, the Court has determined that there will be |
| 23 | no trial on the merits and that we will just decide the need |
| 24 | for the permanent injunction.  Again, it was just preserving an |
| 25 | argument that was previously made, that is all. |

N91HAllC

1          THE COURT:  But I still don't understand what issues

2     would be tried in a trial on the merits that are not going to

3     be tried in the motion to convert the preliminary injunction

4     into a permanent injunction.

5          MS. KILEY:  Your Honor, a trial on the merits would

6     have been solely for the plaintiff to prove deliberate

7     indifference as to medical care as to individually named

8     defendants, which, as we know, is not the case right now.

9          Our understanding is that the trial that is going to

10    begin on Tuesday is for a permanent injunction, and in order to

11    do that, there is a four-factor test which includes within it

12    an analysis and it requires a showing of actual success on the

13    merits of deliberate indifference.  That is a piece of the

14    four-part test.  We were — we, obviously —

15         THE COURT:  So tell me again, what would be tried in a

16    trial on the merits that will not be tried in the motion to

17    convert the PI to a permanent injunction?

18         MS. KILEY:  Your Honor, respectfully, we've never seen

19    a motion to convert the preliminary injunction into a

20    permanent.  We were just told that we were proceeding to trial

21    on a permanent injunction.  And again, we highlight that there

22    is a four-factor test, and that is plaintiffs' burden.

23         THE COURT:  Counsel, I understand there's a

24    four-factor test.  We went through the factors in a preliminary

25    injunction hearing.  Tell me the answer to my question.

N91HAllC

1          MS. KILEY:  I'm sorry, can you repeat the question?

2          THE COURT:  Certainly.

3          What issue do you say should be tried in a trial on

4    the merits that will not be tried in the motion to convert the

5    preliminary injunction into a permanent injunction?

6          MS. KILEY:  I'm sorry, your Honor, respectfully, we

7    never reviewed any motion papers to convert a preliminary

8    injunction, nor have we seen any on the docket.

9          THE COURT:  Counsel, answer my —— OK.  Ms. Agnew, what

10   do you say we're doing on Tuesday?

11         MS. AGNEW:  Your Honor, it's plaintiff's class's

12   position that we will be proving that the plaintiff class has

13   suffered a pattern of ongoing constitutional violations by the

14   denial or discontinuation of their respective medical treatment

15   and that the Court needs to enter a permanent injunction to

16   ensure that the irreparable harm not only ceases but that there

17   is no risk of that harm moving forward.

18         THE COURT:  You acknowledge the four-factor test that

19   Ms. Kiley referenced, right?

20         MS. AGNEW:  Of course, your Honor.  I think that the

21   —— my understanding is the confusion among the parties is we

22   will be proving the merits of the class's claims not any given

23   plaintiff against any given defendant in the second amended

24   complaint.  I can't speak for Ms. Kiley, but this is why I

25   think we need a pretrial order, your Honor, because I'm looking

N91HAllC

```
1   at a footnote.  It says there will be no trial on the merits
2   when, in fact, we're about ready to try the merits of the
3   class's claim.
4             THE COURT:  That's why I am asking you, Ms. Kiley,
5   which issue do you say should be included in the trial on the
6   merits that is not to be included in the motion to convert the
7   preliminary injunction to a permanent injunction?
8             MR. NOLAN:  Your Honor, this is Mr. Nolan.  If I may
9   jump in for a second?
10            THE COURT:  Yes, sir.  Good morning, Mr. Nolan.
11            MR. NOLAN:  Good morning, Judge.
12            We agree this is a trial on the merits and that it's
13   on the four-factor test.  I don't think that —— I think we're
14   unnecessarily getting into semantics between a trial on the
15   merits and a motion to convert.  As far as we're concerned,
16   this is a trial on the merits.  And in terms of —— we were not
17   aware of any motion to convert, so I don't want to get into an
18   academic exercise over it.  The four-factor test, I think we
19   all agree, applies.
20            THE COURT:  One of the reasons we're here, of course,
21   is because the statute prescribes that a preliminary injunction
22   expires after 90 days, right?  Isn't that why we're here at
23   this particular moment in time?
24            MR. NOLAN:  Yes.
25            THE COURT:  Then I think my question was, looking at
```

N91HAllC

1    the footnote 1 in Ms. Kiley's August 31 letter, Dkt. No. 764,

2    it says:  "The Court has determined that we would proceed with

3    a trial on the need for permanent injunction absent a trial on

4    the merits."

5              I think I just heard you say that you agree,

6    Mr. Nolan, that this is a trial on the merits.  That was my

7    view as well.

8              Does anyone disagree with that?

9              MR. NOLAN:  No.

10             THE COURT:  All right.  Then what else do you people

11   want to talk about?

12             MS. AGNEW:  Your Honor, I would like to submit a

13   conforming pretrial order for the Court to sign so that there

14   is no confusion when we start this on Tuesday.  And I'll be

15   very straightforward and say that there are these appeal issues

16   that they've already raised.  I don't want to deal with them on

17   appeal again.  We've heard several times:  We don't know what

18   this case is about, we're not prepared, we don't know, we don't

19   know, we don't know.  I have to —— I have an obligation to my

20   clients to make sure that there's no confusion walking into

21   this trial.

22             THE COURT:  So what is it that you think has to go

23   into the pretrial order?

24             MS. AGNEW:  I think we have to have an enunciation of

25   the issues to be tried.  And forgive me, your Honor, this is

N91HAllC

```
 1    the first trial on the merits I've ever walked into where I
 2    didn't have a JPTO.  And I'm a little bit at a loss as to why
 3    we don't, but here we are, and we've got four calendar days
 4    till we commence trial.
 5            THE COURT:  Ms. Kiley, Mr. Nolan.
 6            MR. NOLAN:  Your Honor, I think we just established
 7    what the trial is about.  It's about the four-factor test.
 8    It's plaintiffs' burden of proof.  We're going to oppose that
 9    burden of proof, and we're ── obviously, on the legal side of
10    things, there are legal defenses that we have that may or may
11    not require a lot of factual development at trial.  We
12    certainly reserve our right to raise arguments about those.
13            But, essentially, we have a trial on the merits.
14    There's a four-factor test.  We're going to oppose proof that
15    plaintiff puts in.  And as far as I understand, your Honor will
16    then make a decision.
17            THE COURT:  What are the arguments on other issues
18    that you expect to present?
19            MR. NOLAN:  Your Honor, I think we will ── any of our
20    affirmative defenses may be in play.  At this point, obviously,
21    we have legal ──
22            THE COURT:  We probably need to know which ones we're
23    going to be dealing with and whether there's going to be
24    evidence on them.  I have Dr. Moores' amended pretrial order,
25    and it lists 859 witnesses.  That's a little difficult, at
```

N91HAllC

1    least for me, to understand unless each one is going to be

2    asked to say his or her name.  That's why we need to know what

3    we are trying here.

4                So what issues ——

5                MR. NOLAN:  Your Honor ——

6                THE COURT:  Go ahead.

7                MR. NOLAN:  Sorry.  Sorry to interrupt.

8                As to the witnesses, your Honor, we just included as

9    many that could potentially be rebuttal witnesses.  But we

10   expect to call the providers in response to any claims made by

11   the class members about those providers' care.

12               THE COURT:  Well, I know I counted 38 witnesses on

13   your list.  Certainly, one usually is not required to list

14   one's rebuttal witnesses.  Which witnesses do you intend to

15   call in your case in chief?

16               MR. NOLAN:  We will call the corresponding provider to

17   each of the plaintiff class members who testify if we feel it's

18   necessary.  Right now, without knowing who plaintiff is going

19   to call, it's unclear who we're going to call.  We also

20   probably intend to put on Dr. Moores at this point as our main

21   sort of summary overall witness as well.

22               THE COURT:  What will Dr. Moores testify to?

23               MR. NOLAN:  Depends on what the plaintiffs' proof is

24   your Honor.

25               THE COURT:  You just told me that she's going to be

N91HAllC

1    your overall general witness.  You must have some idea.

2              MR. NOLAN:  Well, I think some of the testimony will

3    touch on the same issues that were in play at the preliminary

4    injunction phase, but certainly, we're going to testify —— it's

5    really going to be a response to what plaintiff puts in.  If

6    plaintiff doesn't meet her burden of proof, we may not call her

7    at all.

8              THE COURT:  So what about the mootness elephant in the

9    room?

10             MR. NOLAN:  Well, I think we have to wait and see what

11   the proof is, but if the plaintiff puts in —— is unable to meet

12   their burden of proof, we don't need to raise mootness.  And

13   that's where you get into the tension between whether or not

14   plaintiff can prove the existence of an ongoing harm for the

15   class and whether there's mootness.

16             So the two are tied together, right?  So it may be

17   that we don't need to raise the issue of mootness at all if

18   plaintiff can't prove an ongoing harm.

19             THE COURT:  Let us assume that one or more of the

20   witnesses called by plaintiff testifies that he or she has been

21   denied, let's just say, her pain medication upon transfer to a

22   new facility.  Then what?

23             MR. NOLAN:  You know, I can't get into hypotheticals

24   at this point, your Honor.  If there —— I'd have to understand

25   the context.  If plaintiff wants to preview their case, we're

N91HAllC

1    happy to listen.

2            THE COURT:  Counsel, you're not helping any here.

3            All right.  Ms. Agnew, what do you say is required in

4    a new pretrial order, having heard Mr. Nolan's presentation?

5            MS. AGNEW:  Well, I certainly think, your Honor, we

6    need an enunciation of the issues to be tried.  That can be the

7    four-factor test, certainly, but we also need to have it

8    distilled as to what the merits being tried are, because I am

9    not convinced that we're on the same page.

10           If we can't solidify a witness list, I think that's

11   fine, but I also think we need the Court to order the exhibits,

12   and I'll tell you why, your Honor.  For instance, I imagine

13   Dr. Moores is going to testify that she's trained all of these

14   providers in conformity with the Court's preliminary

15   injunction.  However, we have never received any documents

16   demonstrating that, despite Rule 26's obligation to tender any

17   documents that support a position.

18           So we're a little flummoxed how, walking into a trial

19   where there are obviously going to argue mootness, obviously,

20   we don't have the proof.  And as soon as she opens her mouth, I

21   am going to start moving to preclude that testimony because no

22   proofs were offered or tendered in the normal course.

23           So let's get the exhibits signed off on, let's get the

24   issues that are to be tried, and if we can't agree on

25   witnesses, that's fine.

N91HAllC

1        THE COURT:  So in the first instance, I assume you

2    would tender the issues to be tried, and I think —— and forgive

3    me, I don't have it right in front of me, but I think your

4    proposed pretrial order had a list of exhibits, is that right?

5        MS. AGNEW:  Yes, your Honor.  I think they both do,

6    and they mimic each other pretty closely.  But, again, as of

7    right now, defendants' list does not include a lot of the

8    proofs that she would need to argue mootness.  So I think we

9    need to get that signed off so that we all know what's going to

10   walk in the door when this trial starts.

11       THE COURT:  OK.

12       MR. NOLAN:  Your Honor, can I respond?

13       THE COURT:  Mr. Nolan, I take it that you will put in

14   your view of the issues to be tried, correct?

15       MR. NOLAN:  Yes.  I will point out I think one issue

16   that —— of clarification here is that I think

17   plaintiffs' position is that the trial is a test of whether or

18   not the preliminary injunction has been complied with.  We

19   don't agree with that.  We believe that to prove a permanent

20   injunction, you still have to go to the underlying merits of

21   the case.  That is the way that we're preparing for this trial.

22   We don't believe it's a test of compliance necessarily.  I

23   understand that if this was about mootness of the PI that might

24   be an issue, but we don't really see that this is —— this isn't

25   a motion for contempt at this point, and I think that's where

1    plaintiff is trying to push the case.  But, again, we think

2    it's a trial on the merits, the four-factor test.  It's the

3    plaintiffs' case.

4            THE COURT:  But I just asked you, am I correct, you

5    will list the issues to be tried?  And by that I mean not just

6    the four-factor test, but you apparently have additional issues

7    that you want to at least make argument on, right?  Isn't that

8    what you just told me?

9            MR. NOLAN:  We may, depending on what plaintiff puts

10   in.  That's, I think, the test.  We reserve our right to raise

11   any defenses that we raised in our answer to anything that

12   plaintiff has said, but we don't know.

13           THE COURT:  Let me just say this:  I'm not going to

14   hear anything about documents that haven't been produced.  OK?

15   Do we understand each other?

16           MR. NOLAN:  Of course.

17           THE COURT:  So on training documents, if there's going

18   to be testimony by Dr. Moores that her subordinates have been

19   trained, if those documents haven't been produced, we're not

20   going to hear that testimony.  It also seems to me that

21   whatever you think you're going to try, you have to list it,

22   right?  I don't care about a rebuttal where, say, a provider

23   gets on the stand and says, No, absolutely not.  This inmate

24   was provided with medication every day.  That's one thing.  But

25   if there are other issues —— and I thought you told me that

N91HAllC

1     there are issues you intend, as you sit here now, to make

2     argument on —— they had better be listed.

3             Do you disagree?

4             MR. NOLAN:  Sorry.

5             THE COURT:  Go ahead.

6             MR. NOLAN:  What I was referring to is, for example,

7     subject matter jurisdiction.  Certainly, that's not a factual

8     issue at this point, but it is something that we want to

9     preserve.  But items like that, I'm happy to list that.

10            THE COURT:  Why don't you —— exactly.  So why don't

11     you just say:  And defendants continue in their objections to,

12     one, subject matter jurisdiction; two, whatever it is.

13            All right.  Any reason not to do that?

14            MR. NOLAN:  That's fair.

15            THE COURT:  Will you people —— it sounds like you

16     haven't conferred on admissibility of documents.  Is there any

17     reason you can't do that?  I mean, you both listed all your

18     documents.

19            MR. NOLAN:  In fact, your Honor, we proposed to

20     identify all of the exhibits that we would identify as

21     admissible or admitted at the beginning of trial by looking at

22     each other's exhibit lists, and so I think that's something we

23     can do and I'm happy to do.

24            THE COURT:  You should do it in advance of trial.  I'm

25     looking at Dr. Moores' amended pretrial order.  There's a whole

N91HAllC

1   list of things.

2           MR. NOLAN:  We will proposing ——

3           THE COURT:  You people should go through each other's

4   lists and figure out if there remain any documents about which

5   you disagree about admissibility and let me know what those

6   are.

7           Can we do that?

8           MS. AGNEW:  Your Honor, if I may, this is A.J. Agnew.

9           We've actually gone back and forth, and we did not

10  challenge the admissibility of any document.  We are going to

11  ask that defendants lay a proper foundation.  Our concern is

12  that they're going to throw medical records at our clients

13  who've never seen them and don't know the contents, right?

14  But, certainly, I've already said if you have a provider on the

15  stand who wrote medical records, I'm not going to make you lay

16  a foundation, right?  We'll stipulate to that right there.

17          So, unfortunately, this case is a little off the

18  rails.  I don't know why.  We don't have an issue with the

19  admissibility of anything subject to a proper foundation being

20  laid.

21          MR. NOLAN:  Your Honor, I just want to clarify a

22  point.

23          THE COURT:  Go ahead.

24          MR. NOLAN:  Which is something's not really going to

25  be admissible without foundation.  So if we're stipulating to

N91HAllC

1        admissibility, you're stipulating to foundation.

2                THE COURT:  All right.  Well, look, just remember,

3        time is tagged to whoever's talking, and if it turns out that

4        there is needless talking, time will be adjusted.  So you

5        people better get your act together as to what you're talking

6        about.

7                What else?  The only thing I see outstanding is

8        Dr. Mueller.  What's the situation with Dr. Mueller, please?

9                MS. AGNEW:  So, your Honor, it's A.J. Agnew.

10               We've offered to send a car service for her, and she

11       accepted that offer, so we will.

12               THE COURT:  OK.

13               MS. AGNEW:  We're going to get her transportation to

14       and from the courthouse.  My understanding is she'll be here to

15       testify.

16               And I do think, though, we do have the issue of the

17       docket, the actual citation, your Honor.  Again, I circulated a

18       voluntary dismissal to Ms. Kiley twice yesterday that everyone

19       else has signed on.  She doesn't want to sign it, or she hasn't

20       signed it.  I have some concerns this is about their

21       preservation of the severance shouldn't have happened.  I get

22       it, but we need this docket cleaned up.

23               And I will just say, for the Court's clarification, we

24       signed in the —— we filed in the multidistrict litigation

25       panel, and we are having problems because this docket is a

N91HAllC

1    little bit wonky, so to speak.  So I do want to get that

2    cleaned up, and I'm happy to send over a proposed form of order

3    for that as well.

4                THE COURT:  Ms. Kiley.

5                MR. NOLAN:  Your Honor, it's Mr. Nolan.

6                Ms. Kiley and I conferred yesterday about this, and we

7    were going to get back to Ms. Agnew because it was the first

8    that we had received a request to sign.  Our concern is that

9    the caption on that document does not match the current caption

10   in any way of the current litigation, and so it just doesn't ——

11   I'm not comfortable signing something that doesn't match our

12   caption because it looks like it's a different case.

13               THE COURT:  But we have very easy ways to fix that.

14   We just agree as to what the correct caption should be.

15               Is there a reason you guys can't do that?

16               MR. NOLAN:  I don't know.  We just saw the —— we just

17   saw this for the first time yesterday.

18               THE COURT:  Why don't you talk to each other and put

19   together whatever you think the caption ought to be, and then

20   put together and sign the stipulation under the new caption,

21   right?

22               MS. AGNEW:  Your Honor, if I may, this is A.J. Agnew.

23               The caption was already fixed in the Second Circuit.

24   In fact, we spent hours on this in getting it fixed.  This is

25   not the first time they've seen it, and we have a letter to the

N91HAllC

1   Second Circuit agreeing to the change in the caption.

2           Forgive me, I feel like I'm beating my head against

3   the wall over silly, silly, things.

4           MR. NOLAN:  That's exactly our point.  The caption is

5   not the same —— the caption is not the one that we saw in the

6   Second Circuit; it's different.

7           THE COURT:  Mr. Nolan, Mr. Nolan, what's the problem

8   with the caption?

9           MR. NOLAN:  The caption doesn't match the new caption.

10  This is an old caption that we're looking —— or different

11  caption.  There are all sorts of names ——

12          THE COURT:  What do you think the caption ought to be?

13          MR. NOLAN:  I think it should match the Daniels,

14  Rahman, Cruz, Mathis caption.  I guess we can work this out,

15  your Honor.  I'm happy to look at it with Ms. Agnew.

16          THE COURT:  All right.

17          MR. NOLAN:  But the caption sent yesterday didn't look

18  that way.

19          THE COURT:  Let's put our big boy pants on, everybody,

20  and sit down and work it out.  This can't be that difficult,

21  and it is really not of much consequence.

22          What else do we have to discuss, friends?  When will

23  you be submitting these documents?  Saturday?  What day is

24  today?  Saturday night?  Saturday, 5 o'clock?

25          MS. AGNEW:  Sure.  And, your Honor, if the parties

N91HAllC

```
1    can't agree, are you —— do you want us to do a proposed form of

2    order with the position of each?

3              THE COURT:  Yes.

4              MS. AGNEW:  OK.

5              THE COURT:  I would be shocked if you can't get your

6    acts together to agree.

7              What else, friends?

8              MS. AGNEW:  That's all from plaintiff, your Honor.

9              MR. NOLAN:  One quick issue for defendants, your

10   Honor.  Just in terms of planning and given the constraints on

11   timing, would you —— we may or may not have time to give

12   closings.  We, if plaintiff and the Court is amenable, would be

13   willing to stipulate to the preliminary injunction continuing

14   for a short period of time in order to do some form of

15   post-hearing brief the way we did the last time, and I just

16   wanted to raise that as a possible ——

17             THE COURT:  That sounds like a plan.

18             Ms. Agnew, is that all right with you?

19             MS. AGNEW:  If by short he means seven days, sure.  If

20   by short he means an additional 90 days, I can't agree to that,

21   your Honor.

22             THE COURT:  No, look, I'm looking for posttrial

23   briefing within a week.  It's hard to keep these things in your

24   head, especially we're going to be starting a criminal trial on

25   Wednesday, the 13th.  So you people need to get your briefs in
```

N91HAllC

1    within a week.

2           MS. AGNEW:  OK.  Forgive me, your Honor.  This is A.J.

3    Agnew.

4           We are actually starting a federal trial in front of

5    Judge D'Agostino the following Monday.  So what we would

6    suggest is like after the preliminary injunction, defendants

7    can put in their posttrial brief, and we'll do a response

8    within five days.  But you'll forgive me, we're trying back to

9    back two very big trials, and we have two attorneys.

10          THE COURT:  All right.  Is that all right with you,

11   Mr. Nolan?

12          MR. NOLAN:  I would propose simultaneous briefing

13   since it's plaintiffs' burden of proof.  I mean, I don't see

14   why we have to put one in so they can respond to it.  It's

15   probably easier if we just agree on — whether it's 30 days, if

16   they need it, that's fine, but either — I think we should

17   just —

18          THE COURT:  You people agree on a date, but not as

19   long as 30 days, and let me know what you agree on.  And then,

20   obviously, you will agree to extend the preliminary injunction

21   until, let's just say, two weeks after the posttrial briefing.

22          MR. NOLAN:  Yes.

23          THE COURT:  Anything else today, friends?

24          Ms. Reporter, do you need anything from any of us?

25          THE REPORTER:  No, thank you.

N91HAllC

1          THE COURT:  Thanks very much.  Good morning, friends.

2     Thank you for being on.

3          MS. AGNEW:  Thank you, your Honor.

4          (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25