UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER ALLEN, et al.,

                    Plaintiffs,                    No. 19-CV-8173 (LAP)

-against-                                                ORDER

CARL KOENIGSMANN, et al.,

                    Defendants.

---

LORETTA A. PRESKA, Senior United States District Judge:

    This matter is before the Court after a merits trial on
Plaintiffs' request for a permanent injunction as pleaded in their
Second Amended Complaint.  (Dkt. no. 256.)  For the reasons
summarized below and those outlined in the Court's opinion granting
a preliminary injunction, (dkt. no. 552), the Court's preliminary
injunction order, (dkt. no. 602), and the Court's opinion granting
a permanent injunction, (dkt. no. 807), the Court issues the
following Order.

## I.  **Background**

    Plaintiff prisoners in the New York State Department of
Corrections and Community Supervision ("DOCCS") system filed this
action in September of 2019 alleging violations of their rights to
be free of cruel and inhumane treatment pursuant to the protections
of the Eighth Amendment.  Specifically, Plaintiffs alleged that
DOCCS medical staff denied and/or discontinued medications with
abuse potential ("MWAP") pursuant to policies, practices, and

1

customs, without individualized assessments of patients' needs or the efficacy of treatment.  These policies, practices, and customs included but were not limited to the MWAP Policy[1] promulgated in June of 2017.

In December of 2020, Plaintiffs moved for leave to file a Second Amended and Supplemental Complaint ("SAC") seeking, in part, prospective relief to remedy the alleged policies, customs, and practices of denying or discontinuing medications without medical justification. (Dkt. no. 189.)  Leave was granted, (dkt. no. 250), and the SAC was filed on June 25, 2021, (dkt. no. 256). On February 8, 2021, Defendants rescinded the MWAP Policy and replaced it with Health Services Policy 1.24A, "Prescribing for Chronic Pain."

In May of 2022, Plaintiffs moved for certification of injunctive and liability classes and class-wide preliminary injunctions. (Dkt. no. 346).  In opposition, Defendants argued, inter alia, that the motion was moot because the MWAP Policy had been rescinded and replaced by Policy 1.24A (which did not require approval of a RMD before a PCP could prescribe an MWAP).  (Dkt. no. 450 at 5-6.)  After the motions were fully briefed, the Court held an evidentiary hearing on February 6-8, 2023, regarding

---

[1] Policy 1.24 ("the MWAP Policy") required, inter alia, the approval of a Regional Medical Direct ("RMD") before a primary care provider ("PCP") could prescribe an MWAP for a patient.

Defendant Moores' voluntary cessation defense.  As set out in the Opinion and Order granting the preliminary injunction motion, (dkt. no. 552), several DOCCS inmates testified to what the Court found to be ongoing constitutional violations with respect to the treatment of chronic pain patients.  The parties also filed post-hearing briefs. (Dkt. nos. 536 and 545.)

During the preliminary injunction hearing, Dr. Moores' definition of an individualized assessment for chronic pain treatment was received into evidence.  She stated that an individualized assessment must include: (i) a review of the patient's entire medical history; (ii) a thorough physical exam; (iii) a list of the patient's diagnoses and source(s) of pain; (iv) the patient's current pain level; (v) a note of what past medications have worked and what medications have not worked with notes related to side effects; and (vi) a detailed plan going forward on how DOCCS health providers plan to treat the patient. (Hearing Exhibit D-3.)[2]

On March 31, 2023, the Court granted Plaintiffs' motion for certification of a class of prisoners for injunctive purposes

---

[2] Memorandum to Deputy Superintendents for Administration and Health, Facility Health Services Directors, and Nurse Administrators from Carol A. Moores, MD, MPH, MSHA, Deputy Commissioner/Chief Medical Officer regarding Health Care for Chronic Pain Patients, dated October 31, 2022.  (Dkt. no. 489-3.)

pursuant to Fed. R. Civ. P. 23(b)(2) and denied certification of a liability class. (Dkt. no. 553.)  The certified injunctive class was defined as, "[a]ll incarcerated individuals who are or will be in the care and custody of the New York State Department of Corrections and Community Supervision who suffer or will suffer from chronic pain and/or neuropathies who require individualized assessments of medical need for treatment with MWAP medications." ("Plaintiff Class" or "Plaintiff Class members") (Dkt. no. 553 at 2, 17.)  The Court also granted the Plaintiffs' motion for a preliminary injunction and, pursuant to the cautions embodied in Dean v. Coughlin, 804 F.2d 207, 213 (2d Cir. 1986), directed the parties to confer and submit a proposal for the provisions of the preliminary injunction. (Dkt. no. 552 at 66.)  On May 4, 2023, Defendant Moores filed a proposed form of order that was unacceptable to the Court. (Dkt. no. 575-1.) After an in-person conference and a meet and confer, Defendants submitted a second proposed form of order on May 16, 2023.  (Dkt. no. 579-1.)  In response, Plaintiffs sought leave to file an alternative proposed form of order on May 25, 2023. (Dkt. no. 579.) The Court granted Plaintiffs' request. (Dkt. no. 580.)

Having considered the papers, arguments, and briefs filed by the parties and the evidence presented at the hearing, the Court found that the evidence supported the granting of a class-wide preliminary injunction. (Dkt. no. 552.)  Specifically, the Court

4

found that Plaintiff Class members were likely to prevail on the merits of their claims that DOCCS medical providers are deliberately indifferent to the Plaintiff Class members' serious medical need of treatment for chronic pain and neuropathies. In granting the injunction, the Court found that the potential for harm to Plaintiff Class members outweighed the potential harm to Defendant Moores, that the harm to the Plaintiff Class if the Court failed to grant an injunction is irreparable, and that it is in the public interest to grant the injunction.

On June 12, 2023, the Court issued the preliminary injunction specifically finding that Defendants continued to deny or discontinue chronic pain and neuropathy medications to Plaintiff Class members throughout the DOCCS system without medical justification (the "Preliminary Injunction"). The Preliminary Injunction set forth relief that reflected, in large part, DOCCS' own Policy 1.24A. (Dkt. no. 602.) Due to the mandates of 18 U.S.C. § 3626(a)(2), the parties conducted some additional discovery and a merits trial was scheduled. (Dkt. no. 583 at 12:15-13:11, 14:1:23.) On June 20, 2023, the Court ruled that evidence in the record from the preliminary injunction hearing would be incorporated into the permanent injunction trial record. (Dkt. no. 616.)

On September 5, 2023, the Court issued a joint pre-trial order, (dkt. no. 770), and the parties commenced a four-day bench trial on the merits to determine whether a permanent injunction was necessary. After the close of evidence, the parties stipulated to extend the Preliminary Injunction pending post-hearing briefing and the Court's decision on the merits. After considering the papers, arguments, and briefs filed by the parties and the evidence presented at the trials, the Court found that the Plaintiff Class had succeeded on the merits of their claims and that a permanent injunction was warranted. (Dkt. no. 807.) Specifically, the Court found that: (i) Plaintiffs have succeeded on the merits of an Eighth Amendment deliberate indifference claim and established they had suffered irreparable harm as a result of such deliberate indifference; (ii) policies and customs still exist pursuant to which DOCCS providers fail to provide inmates with reasonable pain medication without individualized assessments; (iii) the balance of equities tips in Plaintiffs' favor; and (iv) a permanent injunction would be in the public interest. (See id.) Before setting out the terms of the injunction, the Court will discuss the requirements of the Prison Litigation Reform Act ("PLRA"). 18 U.S.C. § 3626.

## II.   **Legal Standard**

The PLRA states, in relevant part:

> [p]rospective relief in any civil action with respect to
> prison conditions shall extend no further than necessary
> to correct the violation of the Federal right[s] of a
> particular plaintiff or plaintiffs.  The court shall not
> grant or approve any prospective relief unless the court
> finds that such relief is narrowly drawn, extends no
> further than necessary to correct the violation of the
> Federal right, and is the least intrusive means
> necessary to correct the violation of the Federal right.
> The court shall give substantial weight to any adverse
> impact on public safety or the operation of a criminal
> justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).   "Narrow tailoring requires a 'fit'
between the [remedy's] ends and the means chosen to accomplish
those ends.  The scope of the remedy must be proportional to the
scope of the violation, and the order must extend no further than
necessary to remedy the violation." Brown v. Plata, 563 U.S. 493,
531 (2011) (citation and quotation marks omitted).  "[T]he PLRA's
tailoring requirement does not affect the availability of
injunctive relief.  Rather, it affects the scope of the equitable
relief a court may order once that court determines that an
injunction should issue." Dodge v. County of Orange, 282 F. Supp.
2d 41, 86 (S.D.N.Y. 2003).

Courts may not impose remedial orders that "unnecessarily
reach out to improve prison conditions other than those that
violate the Constitution." Brown, 563 U.S. at 531.

> [I]n the prison context, "'a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of [ ] prisons.'" V.W. v. Conway, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017) (quoting Fisher v. Goord, 981 F. Supp. 140, 167 (W.D.N.Y. 1997)). . . . However, "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." Brown v. Plata, 563 U.S. 493, 511 (2011).

Barrett v. Maciol, 20-CV-537 (MAD/DJS), 2022 WL 130878, at *4 (N.D.N.Y. Jan. 14, 2022).

Where, as here, the injunction sought implicates "public consequences" such as the concerns of public safety and the operation of the criminal justice system explicitly mentioned in the PLRA, "'it is incumbent upon a district court exercising its discretion to balance [] the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction.'" Dodge, 282 F. Supp. 2d at 71 (quoting Sierra Club v. Hennessy, 695 F.2d 649 (2d Cir. 1982)).

## III. **Discussion**

Based on the evidence in the record and the findings made by the Court in its permanent injunction opinion, (dkt. no. 807), the Court finds that Defendants continue to deny or discontinue chronic pain and neuropathy medications to patients throughout the DOCCS system without medical justification.  To remedy these violations of Plaintiff Class members' rights, the Court orders the following

8

relief, which is directly aligned with the implementation and enforcement of DOCCS' own Policy 1.24A.  The Court finds this relief is narrowly drawn, extends no further than necessary to correct the violation of the constitutional rights at issue, and is the least intrusive means necessary to correct the violations of the Plaintiff Class members' federal rights.  The Court finds that the scope of this relief is proportional to the scope of Defendants' violations.

In fashioning the following terms, the Court has given appropriate weight to the potential adverse impact on public safety or the operation of the criminal justice system, as well as to the relative conveniences for and possible injuries to the parties that may result from the permanent injunction.  The Court has also given due consideration to whether the terms of the relief unduly interfere with the management of prison conditions and finds that no such risk is present under the terms of the permanent injunction.

**IT IS HEREBY ORDERED** that as of the entry of this Order, the Preliminary Injunction previously entered by the Court on June 12, 2023, is vacated.

**IT IS HEREBY FURTHER ORDERED** that Defendant Moores shall provide a copy of this Order to all DOCCS medical personnel,

including administrators, primary care providers, and nursing staff, within ten days of entry of this Order.

**IT IS HEREBY FURTHER ORDERED** that Defendant Moores and any succeeding Chief Medical Officer who serves in that official capacity, and each of her/his officers, agents, servants, employees, and attorneys, as well as any other person acting in concert with them or on their behalf who receives actual notice of this Order shall:

1. Order that all DOCCS Facility Health Services Directors ("FHSD"), PCPs, and relevant medical staff comply with the provisions of DOCCS' Health Services Policy 1.24A, entitled, "Prescribing for Chronic Pain." Complying with Policy 1.24A shall include the following actions:

a) Each DOCCS patient with a chronic pain condition will be given the Problem List Code 338 "Pain Management."

b) A PCP may prescribe any medication(s) deemed appropriate for treatment of the patient's chronic pain condition. There is no requirement for an approval process except when a non-formulary medication is requested. Non-formulary medications shall be approved in cases where it is documented that other formulary treatments were tried and shown to:

i) be unsuccessful in achieving functional treatment goals; or

ii) cause unacceptable side effects.

c) Specialty consultations will be ordered as indicated for the evaluation and care of chronic pain patients.

d) In the event the PCP does not accept the recommendations of the specialist, the PCP shall:

a) Document in the patient's Ambulatory Health Record ("AHR") the reasons why the PCP does not accept the recommendations;

b) Call the specialist to discuss the case to clarify that the specialist understands the pertinent details of the patient's situation;

c) If the PCP still does not accept the specialist's final recommendations, the PCP shall discuss the case with another DOCCS provider, FHSD, or the RMD;

d) Documentation of these discussions shall be recorded in the patient's AHR; and

e) All treatment decisions will be made by the PCP.

e) Pain management medication shall only be discontinued after a provider has met with the patient, discussed the issues regarding the use of the medication, analyzed the patient's situation, and subsequently determined

that it is in the best interest of the patient for the
medication to be discontinued.  The discussion with the
patient and the reasons for the discontinuation of the pain
medication shall be recorded in the patient's AHR.

f)   Patients with the Pain Management designation Code
338 shall be seen at least every 90 days by a PCP.  At least
annually, the PCP shall meet with the patient to discuss the
patient's treatment plan.

2.   Within 45 days of the entry of this Order, Defendant
Moores or her officers, agents, servants, or employees shall train
all relevant DOCCS medical personnel who have not been trained
since the entry of the Preliminary Injunction on the above
provisions and how they shall be implemented.

3.   Within 60 days of the entry of this Order, Defendant
Moores or her officers, agents, servants, or employees shall
develop and implement a program for identifying new medical
providers hired or rehired by DOCCS and ensure that each is trained
on the provisions of DOCCS Health Services Policy 1.24A within 60
days of his or her hire date, if such a program has not already
been implemented since the entry of the Preliminary Injunction.

4.   Within one year of the entry of this Order, Defendant
Moores or her officers, agents, servants, or employees shall
identify each patient in custody at one of DOCCS facilities who
suffers from a chronic pain condition and add Code 338 to his or

her Medical Problem List, including those patients still in DOCCS custody who suffer from a chronic pain condition and were denied or discontinued from MWAP medications pursuant to the former MWAP Policy.

5.   Within 60 days of the entry of this Order, Defendant Moores or her officers, agents, servants, or employees shall develop and implement a system for identifying all patients who transfer into the custody of DOCCS and suffer from chronic pain conditions and ensure that Code 338 is included in their Medical Problem List, if such a system has not already been implemented by the date of this Order.

6.   Within six months after Code 338 is added to a patient's Medical Problem List, Defendant Moores or her officers, agents, servants, or employees shall ensure the completion of an individualized assessment of that patient's chronic pain management needs by a PCP if one has not been conducted in the year prior to the addition of Code 338.   Such individualized assessment shall conform to Defendant Moores' description of an individualized assessment:

        a)   a review of the patient's medical chart or history;

        b)   a thorough physical examination;

        c)   the creation of a list of the patient's diagnoses
    and source(s) of pain;

        d)   the patient's current pain level;

13

e)     notations of what past medications may have worked to treat the patient's chronic pain, what medications have not worked to treat the patient's chronic pain, and any side effects from medications trialed;

f)     creation of a detailed plan of care for treatment of the patient's chronic pain;

g)     a discussion with the patient about appropriate treatment options; and

h)     documentation of the individualized assessment pursuant to current DOCCS Health Services Policies.

7.   Within six months of the date of this Order, Defendant Moores or her officers, agents, servants, or employees shall ensure the completion of an individualized assessment of the chronic pain management needs by a PCP for each patient who has Code 338 on his or her Medical Problem List as of the date of this Order if one has not been conducted in the year prior.  Such individualized assessment shall include the following:

a)     a review of the patient's medical chart or history;

b)     a thorough physical examination;

c)     the creation of a list of the patient's diagnoses and source(s) of pain;

d)     the patient's current pain level;

e)     notations of what past medications may have worked to treat the patient's chronic pain, what medications have

14

not worked to treat the patient's chronic pain, and any side effects from medications trialed;

f)   creation of a detailed plan of care for treatment of the patient's chronic pain;

g)   a discussion with the patient about appropriate treatment options; and

h)   documentation of the individualized assessment pursuant to current DOCCS Health Services Policies.

8.   Within a year of the date of this Order, Defendant Moores or her officers, agents, servants, or employees shall use their best efforts to identify and prioritize Class Members whose MWAP medications were discontinued between June 1, 2017 and November 1, 2023, and prioritize such Class Members for any necessary coding and/or an individualized assessment.

To ensure progress is made on the individualized assessments mentioned in paragraphs 6, 7, and 8 above, Defendant Moores or her officers, agents, servants or employees shall produce to Plaintiffs, every 30 days from the date of entry of this Order, documentary proof of the individualized assessments of chronic pain patients, which shall include the identity of the patient, the date of the reassessment, the facility in which the reassessment took place, the identity of the provider who conducted the reassessment, and all results of the reassessment.

Defendant Moores or her officers, agents, servants, or employees need only produce documentary proof of an individualized assessment of chronic pain once per patient, given the annual nature of the process.

**IT IS HEREBY FURTHER ORDERED** that Defendant Moores, her successor and/or her counsel shall notify the Court and all parties if any change to Health Services Policy 1.24A is made by DOCCS.

**IT IS HEREBY FURTHER ORDERED** that, pursuant to 18 U.S.C. § 3626(b)(1)(i), no later than two years from the date of entry of this Order, the parties shall inform the Court of their respective positions on whether the terms of this permanent injunction Order should continue or terminate.

**SO ORDERED**.

Dated:     November 22, 2023
           New York, New York

_____
LORETTA A. PRESKA, U.S.D.J.

16